Harrell G. ANDREWS, Plaintiff–
Appellant,

v.

FEDERAL HOME LOAN BANK OF
ATLANTA, Defendant–Appellee.

No. 92–2464.

United States Court of Appeals,
Fourth Circuit.

Argued May 4, 1993.

Decided June 28, 1993.

215

Robert Mauldin Elliot, J. Griffin Morgan, Eliot, Pishko, Gelbin & Morgan, P.A., Winston–Salem, NC, argued, for plaintiff-appellant.

John Francis Wymer, III, Powell, Goldstein, Frazier & Murphy, Atlanta, GA, argued (Martin N. Erwin, Smith, Helms, Mulliss & Moore, Greensboro, NC, on brief), for defendant-appellee.

Before WILKINSON and HAMILTON, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

This case presents the question of whether a regional Federal Home Loan Bank was a government actor when it discharged one of its employees. We hold that it was not, and accordingly, we affirm the district court's grant of summary judgment to defendant.

### I.

The Federal Home Loan Bank of Atlanta (the Bank) is one of twelve regional banks set up by Congress under the Federal Home Loan Bank Act to provide banking services to member institution savings-and-loans. 12 U.S.C. §§ 1421–49. Services include lending to member thrifts, serving as a depository, processing of checks, and providing economic analysis. The Bank operates as a central credit facility for its members, enhancing the liquidity of the thrift industry by allowing members to secure advances against their assets, which are primarily home mortgages. *See Fidelity Financial Corp. v. Federal Home Loan Bank,* 792 F.2d 1432, 1434 (9th Cir.1986). The Bank receives no federal funding. 12 U.S.C. § 1438. It is a corporation whose shares are wholly owned by its member institutions and whose profits are distributed as dividends on a quarterly basis

to those shareholders. 12 U.S.C. § 1426(g). Member institutions vote for eight of the fourteen directors of the Bank, 12 U.S.C. § 1427(a), and the directors are responsible for directing the Bank's affairs, including the election of the Bank president. 12 U.S.C. § 1427(j).

At the time of the events giving rise to this lawsuit, the Bank was supervised and regulated by the Federal Home Loan Bank Board (the Board), an independent agency of the federal government. 12 U.S.C. § 1437, *repealed by* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Title VII, § 703(a), Pub.L. No. 101–73, 103 Stat. 183, 415. The Board appointed six of the Bank's directors and designated the Bank's chairman and vice-chairman. 12 U.S.C. § 1427(a), (g), *repealed by* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Title VII, § 702(a), Pub.L. No. 101–73, 103 Stat. at 413. In addition, the Board (through its authority over the Federal Savings and Loan Insurance Corporation) had the authority to examine savings-and-loans, which it had delegated to employees of the regional Home Loan Banks. *See generally* Dirk S. Adams & Rodney R. Peck, *The Federal Home Loan Banks and the Home Finance System*, 43 Bus.Law. 833 (1988).

In June 1987, Harrell G. Andrews was fired by the Bank from his position as a field examiner in its Charlotte office. The parties offer very different explanations for the discharge. Andrews claims that he was discharged for criticizing a change in the Bank's asset-classification policy. The Bank claims that it terminated Andrews for behavior that compromised an examination and for his failure to cooperate with Bank personnel who were charged with inquiring into that behavior. At Andrews' request, an Ombudsmen Committee appointed by the Federal Home Loan Bank Board reviewed Andrews' termination. The Committee upheld the action of the Bank.

After his termination, Andrews filed this lawsuit, alleging violations of the First and Fifth Amendments, along with a variety of state law claims. After removing the case to federal court, the Bank filed a motion for summary judgment, which the district court granted. The court rejected Andrews' constitutional claims because the Bank that terminated him was not a government actor. It rejected Andrews' state law claims because they were preempted by federal statute. Andrews now appeals.

## II.

In order to establish a violation of the First Amendment, Andrews must first show that the federal government was responsible for the termination of his employment. *Hudgens v. NLRB*, 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196 (1976) ("It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state."). In our constitutional scheme, state action doctrine protects the private sector from the restrictions imposed on the conduct of government. The line drawn by state action thus "permit[s] citizens to structure their private relations as they choose subject only to the constraints of statutory or decisional law." *Edmonson v. Leesville Concrete Co., Inc.*, —— U.S. ——, ——, 111 S.Ct. 2077, 2082, 114 L.Ed.2d 660 (1991).

Many of the indicia of the Bank's operations are characteristic of a private institution: the Bank is privately funded, privately owned, and it pays out its profits to its shareholders in the form of quarterly dividends. The Bank provides private banking services, such as lending money, issuing letters of credit, and serving as a trustee. The Bank's employees are not in the civil service and are not employees of the federal government. There is thus ample reason to conclude that, despite its federal charter, the Bank operates more like a private entity than as a part of the federal government. *See San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 543, 107 S.Ct. 2971, 2985, 97 L.Ed.2d 427 (1987) (holding USOC to be a private entity despite its federal charter). It is clear that Congress intended that the Home Loan Bank system be owned and operated in the main by member institutions rather than the federal government. *See Hannah v. Federal Land Bank*, 903 F.2d 1159, 1162 (7th Cir. 1990) ("both Federal Land Bank Associations

and Production Credit Associations are farmer-owned and operated agencies rather than federal instrumentalities.").

### III.

■ Andrews nonetheless claims that the Bank's termination of him qualifies as state action, because the Bank was an agent or instrumentality of the federal government. Alternatively, Andrews claims that the Board was a joint participant in the decision to terminate him.

We recognize that the many private characteristics of the Bank's operations cannot end the inquiry. In certain circumstances, a private actor can still be bound by constitutional limitations because its "conduct is fairly attributable to the state." *Arlosoroff v. National Collegiate Athletic Ass'n,* 746 F.2d 1019, 1021 (4th Cir.1984) (footnote omitted). In order to show state action by a private entity, however, it must be demonstrated that "the private party charged with the deprivation could be described in all fairness as a state actor." *Edmonson,* —— U.S. at ——, 111 S.Ct. at 2083 (citations omitted). A private party can be deemed a state actor in four contexts: (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen. If the conduct does not fall into one of these four categories, then the private conduct is not an action of the state. Applying these categories to the instant case, we find no state action in Andrews' termination.

### A.

■ The first category, coercion by the state, stands for the obvious proposition that when the government orders specific conduct, it must be held accountable for that conduct. The presumption in favor of respecting the private choice of individuals is dissolved by the force of state command. "When the State has commanded a particular result, it has saved to itself the power to determine that result and ... has removed that decision from the sphere of private choice." *Peterson v. City of Greenville,* 373 U.S. 244, 248, 83 S.Ct. 1119, 1121, 10 L.Ed.2d 323 (1963) (state action when restaurant excluded black patrons in conformity with local ordinance); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970) ("a State is responsible for the discriminatory act of a private party when the State, by its law, has compelled the act."). The application of the category of coercion may be less obvious in other cases. In *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), the Court found state action for Fourth Amendment purposes when federal regulations authorized railroads to test for the presence of drug or alcohol in employees who violated certain safety rules. Although the regulation was permissive on its face, the Court nonetheless concluded that state action was involved because the regulations superseded collective bargaining agreements and prohibited the railroad from divesting itself by contract of the authority to test employees. *Id.* at 615, 109 S.Ct. at 1412. In addition, the regulation made compliance by employees mandatory. *Id.* Thus, the regulation narrowed the range of private choices available under contract law to the railroad and its employees; accordingly, constitutional limitations came into play to restrain the government's power.

The Board's regulation of the Bank does not fall within this first category of governmental coercion. The Board can hardly be said to have coerced the Bank into terminating Andrews. The Bank made that decision on its own, and the Board became involved only when Andrews sought review from the Board's Ombudsmen Committee, long after the Bank had terminated Andrews. The Bank was established by federal statute, but that statute does not establish personnel policies for the Bank. Nor does the mere fact that the Federal Home Loan Act permitted the Bank to terminate Andrews "at pleasure" transform that termination into an act of the federal government. *See Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 160 n. 10, 98 S.Ct. 1729, 1735 n. 10, 56 L.Ed.2d 185 (1978) ("It would intolerably broaden ... the notion of state action ... to hold that the mere existence of a body of property law in a State, whether

decisional or statutory, itself amounted to 'state action' even though no state process or state officials were ever involved in enforcing that body of law."). The Bank is extensively regulated by the Board, but regulation of an entity, standing alone, will not make a private entity an agent of the state. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 176–77, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1972). The government must have compelled the act of which Andrews complains. "If the state in its regulatory or subsidizing function does not order or cause the action complained of ... there is no state action." *Arlosoroff,* 746 F.2d at 1022.

### B.

■ The second category of state action involves cases in which the government has delegated responsibility to a private party for conduct that would be unconstitutional if done by the government. Government cannot evade constitutional duties by delegating the responsibility to a private contractor. In *West v. Atkins,* the state contracted with a private physician to provide medical care for its prisoners, a duty imposed on the state by the Eighth Amendment. 487 U.S. 42, 43–46, 108 S.Ct. 2250, 2252–53, 101 L.Ed.2d 40 (1988). The physician was found to be a state actor in his care of the prisoners. *Id.* at 56, 108 S.Ct. at 2259 ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."). In contrast, when the state has not delegated a constitutional duty, there is no state action if the services are provided by a private contractor. *See Rendell–Baker v. Kohn,* 457 U.S. 830, 841–43, 102 S.Ct. 2764, 2771–72, 73 L.Ed.2d 418 (1982) (private school providing educational services to state not limited by First Amendment or Due Process in terminating teachers and counselor); *Blum v. Yaretsky,* 457 U.S. 991, 1011, 102 S.Ct. 2777, 2789, 73 L.Ed.2d 534 (1982) (private nursing home providing services to Medicaid not limited by Due Process in discharges and transfers of patients). This second category protects the presumption of individual choice for private parties, even when they act on behalf of the govern-

ment, while not permitting the government to take advantage of that presumption by evading its own duties under the Constitution.

The Board's acts do not fit the second category for state action. While the Constitution plainly permits the federal government to supervise savings-and-loans, it places no duty on the government to do so. What may be wise as a matter of public policy is not compelled as a matter of constitutional decree. Hence the government evaded no constitutional duty by delegating the examination of thrifts to regional Bank employees. *West,* 487 U.S. at 56, 108 S.Ct. at 2259.

### C.

■ The third category is commonly denominated the "public function" theory of state action. It encompasses the "exercise by a private entity of powers traditionally exclusively reserved to the State." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). State action via the private exercise of public functions, however, has been found only in narrow circumstances. *See id.* (citing *Nixon v. Condon,* 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932) (election); *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (election); *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company town); *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) (municipal park)). *See also Edmonson,* —— U.S. at ——, 111 S.Ct. at 2086 (finding state action in the use of peremptory strikes because "a private entity becomes a government actor for the limited purpose of using peremptories during jury selection. The selection of jurors represents a *unique governmental function* delegated to private litigants by the government ..."; emphasis added). This third category of state action serves a purpose similar to the second, in that it prevents a state from evading the Constitution by delegation. Its reach has been "carefully confined," however, *Flagg Bros.,* 436 U.S. at 163, 98 S.Ct. at 1737, so as not to interfere with the state's ability to contract for services not "traditionally exclusively reserved to the state."

The functions performed by the Bank and its employees—banking and bank examina-

tion—are not traditionally and exclusively public functions. *See Morast v. Lance,* 807 F.2d 926, 931 (11th Cir.1987).[1] The mere fact that the Bank's "regulatory function may be of some public service lends no support to the finding of state action, for the function is not one traditionally reserved to the state." *Arlosoroff,* 746 F.2d at 1021. *Cf. Morin v. Consolidated Rail Corp.,* 810 F.2d 720, 723 (7th Cir.1987) (per curiam) (Conrail held not to be a federal agency). Prior to 1932, when the Federal Home Loan Bank System was established, the federal government had no involvement in regulating the thrift industry. Paul T. Clark et al., *Regulation of Savings Associations Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989,* 45 Bus.Law. 1013, 1017 (1990). Even today, self-regulatory mechanisms of important industries exist alongside governmental ones. *See* 15 U.S.C. § 78o–3 (authorizing self-regulation of securities broker-dealers subject to Securities and Exchange Commission supervision). Important social ends are commonly accomplished through a happy mix of public and private means. For example, the function at issue in this case—the independent auditing of business and financial institutions—is often undertaken by both public and private examiners. The fact that the examiners here have been both civil service employees and employees of the Bank who lack civil service protection demonstrates the inadvisability of denominating this function an exclusively public one. *See* Edwin J. Gray, *The Role of Regulation in the Thrift Industry,* 1987 Ann.Rev.Banking L. 235, 243.[2] The Bank, therefore, does not perform a function that has been traditionally and exclusively reserved to the sovereign, and we cannot regard its conduct as state action.

1. The district court identified personnel decisions as the function at issue. It then held personnel decisions not to constitute a public function. While we would not differ with that characterization, we think that the Bank's status as a governmental entity is what the parties contest for purposes of state action doctrine. If the Bank were held to be performing a public function for purposes of state action doctrine, then it would be difficult to conclude that personnel decisions reached during the performance of that public function were not subject to constitutional strictures.

### D.

The fourth category of state action limits the actions that a state can take in enforcing the rights of private individuals. When the state commits an unconstitutional act in the course of enforcing private rights, the private entity may be held accountable for invoking the state's authority. For example, when the state enforces a property right at the behest of a private entity, the state's actions may be limited by Due Process. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982) (state action found when "Clerk of the state court issued a writ of attachment, which was then executed by the County Sheriff" on basis of ex parte petition from creditor). By contrast, when a private party acts alone without the assistance of state agents to enforce property rights created by state law, no state action is involved. *See Flagg Bros.,* 436 U.S. 149, 166, 98 S.Ct. 1729, 1738 (no state action where warehousemen sold goods, executing lien permitted by state law). There must be state *action,* not "mere acquiescence." *Id.* at 164, 98 S.Ct. at 1737; *San Francisco Arts & Athletics,* 483 U.S. at 547, 107 S.Ct. at 2985. This, too, is consistent with state action doctrine's protection of the private sphere: parties can contract around the permissive remedies provided by state law. When the private individual invokes the aid of the state, however, the state must act within the confines of the Constitution.

Under the fourth category, the Board committed no unconstitutional act in the course of enforcing the Bank's right to terminate Andrews. The Bank acted in furtherance of its statutory right to dismiss Andrews at will, 12 U.S.C. § 1432(a), and it had no need to enlist the Board to enforce that right. The

2. Examiners were civil service employees until 1985, and they were returned to the civil service in 1989 after the passage of FIRREA. Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Tit. III, § 301, Pub.L. No. 101–73, 103 Stat. at 279, *codified at* 12 U.S.C. § 1462a(g)(4)(B)(i). At the time of his dismissal in June of 1987, Andrews was not a civil service employee.

Ombudsmen Committee reviewed the Bank's action at Andrews' request, not at the request of the Bank or at the direction of the Board. The Bank acting alone, not the Board, fired Andrews—the availability of *post hoc* review did not change this fact. *Cf. Flagg Bros.*, 436 U.S. at 161–62 n. 11, 98 S.Ct. at 1736 n. 11 (availability of judicial review after sale under warehouseman's lien did not implicate state in original sale). The Board's decision not to interfere with the Bank's termination of Andrews thus did not make that act one of the federal government. *See id.* at 164, 98 S.Ct. at 1737; *cf. Milburn v. Anne Arundel County Dep't of Social Serv.*, 871 F.2d 474, 477–79 (4th Cir.1989) (child abuse by foster parents not state action when state failed to intervene to protect child). We conclude, therefore, that Andrews' termination was the act of the Bank, and it cannot be fairly attributed to the Board or to the federal government.

### IV.

 "The directors of each Federal Home Loan Bank ... shall have power ... to select, employ, and fix the compensation of such officers, employees, attorneys, and agents ... and to *dismiss at pleasure* such officers, employees, attorneys, and agents...." 12 U.S.C. § 1432(a) (emphasis added). Andrews claims that the district court erred in holding his state law wrongful termination claim preempted by this federal statute. Andrews argues that his state claim supports the purpose of the Federal Home Loan Bank Act to regulate the soundness of thrifts by providing protection to employees who are terminated for refusing to violate the Act or its regulations.

The Supreme Court has identified three situations in which federal law preempts state law: (1) when explicit statutory language preempts state law; (2) when states regulate a field that Congress intended to be completely occupied by the federal government; or (3) when state law actually conflicts with federal law. *English v. General Electric Co.* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). *English* involved a state remedy which was supplementary to the remedy provided by Congress. *See id.* at 89, 110 S.Ct. at 2280–81. In this case, however, Congress intended for federal law to define the discretion which the Bank may exercise in the discharge of employees. Any state claim for wrongful termination would plainly conflict with the discretion accorded the Bank by Congress. *Accord Inglis v. Feinerman*, 701 F.2d 97, 99 (9th Cir. 1983) ("We hold that § 1432(a) permits no inroads into the 'dismiss at pleasure' language."). *See also Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 931 (6th Cir.1987) ("at pleasure" language of the Federal Reserve Act, 12 U.S.C. § 341, Fifth, "preempts any state-created employment right to the contrary."). The district court therefore did not err in holding Andrews' state law claim preempted.

### V.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.