Vincent A. MOODIE, Plaintiff,

v.

FEDERAL RESERVE BANK OF NEW YORK, Defendant.

No. 91 Civ. 6629(MEL).

United States District Court, S.D. New York.

Nov. 17, 1993.

Cleary, Gottlieb, Steen & Hamilton, New York City (Thomas J. Moloney, David M. Meisels, Alex E. Miller, of counsel), for plaintiff.

Ernest T. Patrikis, Federal Reserve Bank of New York, New York City (Joseph H. Sommer and Thomas C. Baxter, Jr., of counsel), for defendant.

LASKER, District Judge.

The Federal Reserve Bank of New York ("Bank") moves to reargue Part IV of an Order and Opinion, dated September 20, 1993, 831 F.Supp. 333, denying the Bank's motion for summary judgment in this race discrimination action filed by its discharged employee, Vincent Moodie. Part IV denied the Bank's motion for summary judgment on Moodie's state law claim and held that § 341(5)[1] of the Bank's Charter did not preempt the New York State Human Rights Law.

The Bank moves pursuant to Rule 59 of the Federal Rules of Civil Procedure and Civil Rule 3(j) of this Court's Rules. The present motion is inappropriate under Rule 59 because the Bank's earlier motion for summary judgment was denied, hence no judgment was entered on which the Bank could bring a motion to alter or amend.

To prevail on a motion to reargue, the moving party must specify "the matters or controlling decisions which ... the court has overlooked." Civil Rule 3(j).

On the present motion, the Bank raises new arguments admittedly "not presented in ... earlier papers," claiming that had these arguments been raised they would have altered the conclusion that the New York State Human Rights Law applied to the Bank. The Bank also cites a recently-decided Fourth Circuit case in support of its legal position. The Bank has met neither requirement of Rule 3(j) and its motion to reargue is denied.

Although Rule 3(j) precludes the Bank from presenting new material on a motion to reargue, we nevertheless address the Bank's arguments to clarify our prior holding if that is necessary.

In the Bank's earlier motion for summary judgment, the issue presented was whether 12 U.S.C. § 341(5) preempted N.Y. Executive Law § 290 in a case of alleged race discrimination in employment. The Bank now argues that other provisions of New

---

1. 12 U.S.C. § 341(5) authorizes the Bank "to appoint by its board of directors a president, vice-presidents, and such officers and employees ... and to dismiss at pleasure such officers and employees."

York's employment law are inconsistent with the Bank's Charter, apart from § 341(5). For instance, the Bank points to the differences between New York Labor Law § 201–d(2)(a) on employee political activities and the Bank's internal policy which follows the federal Hatch Act, the different ages at which age discrimination begins under the New York State Human Rights Law and under Title VII, and other state employment laws that impact the Bank's status as an at-will employer beyond the prohibition against race discrimination.

None of these purported conflicts is relevant to the case at hand, nor do they affect the earlier determination that Congress did not intend 12 U.S.C. § 341(5) to preempt state anti-discrimination laws that are consistent with federal anti-discrimination legislation.

■ The Bank's Brief (at p. 4) indicates that it is troubled by a statement in the earlier Opinion that "[t]he New York State Human Rights Law, with provisions analo-. gous to Title VII, creates no additional employment rights in conflict with the Bank's status as an employer at will." The quoted sentence may have overstated the situation and, if so, is now modified to specify that the particular provision of state law at issue in this case—the New York State Human Rights Law with regard to race discrimination in employment—does not impose additional burdens on the Bank beyond the legal constraints of Title VII.

■ The final point raised by the Bank in the instant motion is not new. It reargues the Bank's position that deference should be paid to the New York State Division of Human Rights, which had decided that it had no jurisdiction over the Bank because the Bank is a "corporate instrumentality of the United States." This position appears to be directly contrary to a determination made by the Appellate Division, Fourth Department, that the Red Cross—likewise a "federal instrumentality"—was nevertheless subject to "New York's exercise of its police powers under the Human Rights Law." *Greater Buffalo Chapter, American Red Cross v. State Division of Human Rights*, 118 A.D.2d 288, 504 N.Y.S.2d 882, 885 (4th Dept.1986).

The Bank also cites a recently-decided Fourth Circuit opinion not referred to on the Bank's original motion, *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214 (4th Cir.1993). *Andrews* held that a similar provision of the Federal Home Loan Bank's Charter granting the Bank discretion to dismiss employees "at pleasure" preempted state laws governing wrongful termination.

*Andrews* is not a case of employment discrimination based on race, nor is it controlling. The plaintiff in *Andrews* alleged that he was fired for criticizing a change in the Federal Home Loan Bank's policy. The Fourth Circuit held that state-created contract rights in employment directly conflicted with the "at pleasure" provision and the Federal Home Loan Bank's status as an employer at will. *Andrews* did not address the preemptive effect, if any, of the "at pleasure" provision on state anti-discrimination laws.

■ To support its motion to reargue, the Bank has submitted a policy statement of the Equal Employment Opportunity Commission ("EEOC"), dated October 20, 1993. The EEOC policy statement discusses the Commission's position that the Federal Reserve Banks are private employers covered by the private sector provisions of the Age Discrimination in Employment Act, Title VII, the Equal Pay Act and the Americans with Disabilities Act. The Bank highlighted a paragraph of the statement describing *United States v. Hollingshead*, 672 F.2d 751 (9th Cir.1982), a case holding that an employee of a Federal Reserve Bank was a "public official" within the meaning of the Federal Bribery Statute.

The EEOC statement neither addresses nor supports the Bank's contention that § 341 of its Charter preempts state anti-discrimination laws. It merely clarifies the Commission's position that Federal Reserve Banks are subject to federal employment discrimination laws as private employers. The EEOC statement does not call into question our earlier finding.

\*　　\*　　\*

Defendant's motion to reargue is denied.

It is so ordered.