69 F.3d 533
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mary G. HUGGINS; Paul D. Allen; J. Gary Early, Plaintiffs-Appellants,
v.
Vickie L. APPERSON, Examiner-inCharge for the NCUA; Charles
Herrington, Commercial Loan Examiner for the NCUA; David
Freeman, Agent of the NCUA; Timothy McCollum, Attorney,
NCUA Deputy Regional Director; Larry Maynard, NCUA
Attorney; H. Allen Carver, Regional Director of the NCUA;
Timothy Hornbrook, Acting Regional Director of the NCUA,
Defendants-Appellees,
and
CNS FEDERAL CREDIT UNION; Keith M. Thompson, Chairman and
Member of the Board of Directors; Clara Wilkes, Member of
the Board of Directors; Dorothy Dukes, Member of the Board
of Directors; Graham Hallman, Member of the Board of
Directors; Edward Gibson, Member of the Board of Directors;
Wade W. Watson, Member of the Board of Directors; William
F. Willis, Member of the Board of Directors; United States
of America, Defendants.
 No. 94-2188.
 United States Court of Appeals, Fourth Circuit.
 Nov. 6, 1995.
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. Solomon Blatt, Jr., Senior District Judge. (CA-93-566-2-8, CA-93-571-2-8, CA-94-1561-2-8)
 ARGUED: Stephen Peterson Groves, Sr., YOUNG, CLEMENT, RIVERS & TISDALE, Charleston, South Carolina, for Appellants. John Harris Douglas, Assistant United States Attorney, Charleston, South Carolina, for Appellees. ON BRIEF: William J. Leath, Jr., YOUNG, CLEMENT, RIVERS & TISDALE, Charleston, South Carolina; E. Paul Gibson, RIESEN LAW OFFICE, North Charleston, South Carolina; Ralph E. Hoisington, Charleston, South Carolina, for Appellants. J. Preston Strom, Jr., United States Attorney, Charleston, South Carolina, for Appellees.
 Before MURNAGHAN and MOTZ, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Paul D. Allen, J. Gary Early, and Mary G. Huggins, former employees of the Charleston Naval Shipyard Federal Credit Union ("CNS Federal Credit Union" or "Credit Union"), appeal from the district court's grant of summary judgment against them. The appellants claim that certain agents and officials of the National Credit Union Administration ("NCUA") are responsible for the termination of their employment without due process. Because we find that the NCUA agents were not substantively responsible for the alleged denial of due process, we affirm.
 
 I.
 
 2
 Allen, Early, and Huggins, the appellants in the instant case, are the former president, senior vice-president, and vice-president, respectively, of the CNS Federal Credit Union, a federally insured credit union based in North Charleston, South Carolina. The appellees are Vickie L. Apperson, Charles Herrington, David Freeman, Timothy McCollum, Larry Maynard, H. Allen Carver, and Timothy Hornbrook, agents and officials of the NCUA, an entity charged with overseeing federally insured credit unions.
 
 
 3
 The NCUA is an independent federal agency which regulates, supervises, and insures both federal credit unions and federally insured state-chartered credit unions, pursuant to its authority under the Federal Credit Union Act, 12 U.S.C. Secs. 1751-1795k. The NCUA operates through six regional offices, each managed by a regional director who reports to the three-member board that heads the agency. 12 C.F.R. Sec. 790.2. The NCUA board members are appointed by the President of the United States. 12 U.S.C. Sec. 1752a(b).
 
 
 4
 The principal method by which the NCUA carries out its supervisory responsibilities is through annual, on-site examinations of credit unions. 12 U.S.C. Secs. 1756, 1784. The examinations are conducted by NCUA examiners from regional offices who thoroughly review documentation and prepare financial reports. Id. Sec. 1784(a). The examiners provide a written report of the examination to the credit union identifying problem areas, if any, for the credit union to address, and the examiners discuss the problems with credit union officials.
 
 
 5
 The Federal Credit Union Act authorizes the NCUA Board to undertake various administrative actions against federally insured credit unions or persons affiliated with them, including conservatorship of the institution, cease and desist actions, prohibition or removal actions, and imposition of civil money penalties. See 12 U.S.C. Sec. 1786. In some cases, rather than asking the NCUA Board to take formal administrative action against a credit union, the NCUA field agents who discover unsound practices occurring at a credit union will make recommendations to the credit union in the form of a "Record of Action," which becomes a part of the examination report. The Record of Action contains recommendations for the credit union to follow in order to correct the identified problems.
 
 
 6
 In May of 1992, the NCUA examination team conducted an annual examination at the CNS Federal Credit Union, as required by the Credit Union Act. See 12 U.S.C. Sec. 1756. The NCUA agents released their examination report on July 6, 1992 at a special meeting of the Credit Union board. During that meeting, the NCUA agents reviewed the problems found during the examination in some detail, and then discussed the recommendations contained in a Record of Action that was appended to the examination report. In the Record of Action, the NCUA agents made several recommendations, among them that the Credit Union board suspend plaintiffs Allen, Early, and Huggins with pay until a full Credit Union board meeting could be "[c]onduct[ed] ... at which all board members will vote to terminate or secure the resignation of" Allen, Early, and Huggins. The NCUA agents originally indicated in the Record that the full board meeting should be held on July 13, 1992; however, the agents later extended the time frame for securing the resignations to July 20, 1992. In response to a question from one of the board members at the July 6 meeting concerning whether the NCUA officials had sufficient documentation of violations, NCUA agent McCollum stated that it did, and Apperson said that the data would be reconfirmed. One of the Credit Union board members noted that the Credit Union itself needed to investigate and to consult an attorney.
 
 
 7
 On July 13, 1992, the CNS Federal Credit Union board, during a regular monthly meeting, secured Allen's resignation. Counsel for the Credit Union, Thomas Curlee, was present at the meeting. At the time of his resignation, Allen had been employed at the Credit Union for approximately fourteen years. Allen worked at the Credit Union pursuant to an employment agreement that had been executed on January 1, 1989. The contract stated that Allen would serve as president from that date until December 31, 1993, and contained a provision for automatic renewal for an additional five-year period. Under the contract, Allen could be terminated for any one of five enumerated causes, three of which required written notice. Huggins was terminated on July 20, 1992; she had been working at the Credit Union for nineteen years, pursuant to an employment manual and various company procedures. Early had been at the Credit Union for five years when the Credit Union board accepted his resignation on July 20, 1992. He, like Huggins, worked at the Credit Union pursuant to company policies and the provisions of a Credit Union employment manual. The Credit Union board did not provide notice of removal or a hearing to Allen, Early, or Huggins before the employees resigned or were terminated.
 
 
 8
 On March 12, 1993, Allen and Huggins separately filed complaints against the CNS Federal Credit Union, the individual members of the Credit Union's board of directors, and the members of the NCUA examination team in the United States District Court for the District of South Carolina. Allen filed an amended complaint on January 21, 1994, and Huggins did likewise on January 26, 1994. Early filed a similar complaint on June 2, 1994, and on July 11, 1994, the district court consolidated the three cases for discovery and trial. Each plaintiff asserted causes of action for breach of an employment contract, wrongful discharge, and violation of due process. After the defendants filed a motion for dismissal or summary judgment, the district judge held a hearing and, in an order dated August 24, 1994, granted summary judgment to the NCUA defendants based on the fact that the plaintiffs could show no violation of due process that was attributable to the defendants or, in the alternative, that the defendants were entitled to qualified immunity. No federal claims remained in the case, and the district court declined to exercise supplemental jurisdiction over the remaining state claims, which it found would be more appropriately litigated in state court. The case was therefore dismissed from the federal court's jurisdiction. Allen, Early, and Huggins appeal the district court's grant of summary judgment to the defendants.
 
 II.
 
 9
 Under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971), a cause of action for damages may be maintained against a federal agent who violates the Constitution while acting under the color of his or her authority. See also Davis v. Passman, 442 U.S. 228, 248-49 (1979) (Bivens action may be maintained for violation of the Fifth Amendment Due Process Clause). Allen, Early, and Huggins essentially make two separate arguments aimed at proving that although the plaintiffs were technically terminated[1] by their employer, the CNS Federal Credit Union, the NCUA agents should be held responsible for actually being the cause of the deprivation of the plaintiffs' employment without due process. First, the plaintiffs point out that if the NCUA had terminated them directly, the agency would have been required to accord them due process under 12 U.S.C. Sec. 1786(g)(4). The plaintiffs argue that it was therefore improper for the NCUA agents, rather than firing the plaintiffs directly, to effect their terminations indirectly, i.e., through recommendations to the CNS Federal Credit Union, thereby avoiding the NCUA's obligation to provide the plaintiffs with the procedural safeguards guaranteed by statute. Second, Allen, Early, and Huggins contend that even if the NCUA agents had the authority to recommend their termination to the Credit Union board, the NCUA agents actually coerced the Credit Union into firing them, and the NCUA agents should therefore be held responsible for the Credit Union's denial of the employees' due process rights.
 
 
 10
 The district court rejected both of the plaintiffs' arguments. As to the plaintiffs' first argument, the district court found that it was permissible for the NCUA agents to recommend the termination of Allen, Early, and Huggins to the Credit Union, despite the existence also of formal means by which the NCUA itself could have directly terminated the Credit Union employees. It therefore found that no due process was owed under the formal procedures for removal set forth in 12 U.S.C. Sec. 1786(g)(4). Second, the court held that in recommending the termination of Allen, Early, and Huggins to the Credit Union, the NCUA agents did not prevent or discourage the Credit Union from according due process to the plaintiffs, and were thus not responsible for the deprivation.[2]
 
 
 11
 Alternatively, since consideration of the merits of the controversy made it clear, the district court also held that the defendants were entitled to qualified immunity, because reasonable NCUA examiners would not have thought that they were violating the plaintiffs' rights to due process by their recommendations to the Credit Union board.[3] Because we find both that the NCUA agents were not required to proceed by formal action under the Federal Credit Union Act, and that the plaintiffs have not produced sufficient evidence tending to show that the agents were responsible for the alleged deprivation of the plaintiffs' employment without due process, we affirm the district court's grant of summary judgment to the NCUA defendants.
 
 
 12
 The first question that we must answer is whether the NCUA agents were required to terminate the plaintiffs themselves pursuant to formal statutory procedures, rather than recommending termination to the CNS Federal Credit Union. The defendants concede that, had they proceeded in this manner, they would have been required to furnish the plaintiffs with certain procedures under the statute, i.e., notice and an opportunity to be heard. Allen, Early, and Huggins argue that the NCUA agents should not be able to avoid the dictates of due process by forcing the Credit Union board to terminate them, rather than proceeding under the NCUA's own statutory authority.
 
 
 13
 The NCUA has the statutory authority to institute termination proceedings against credit union officials, see 12 U.S.C. Sec. 1786(g). However, an agency may have discretion to proceed informally even where regulations are in place that provide for formal action by the agency. See United States v. Gaubert, 499 U.S. 315, 330 (1991). Gaubert was a suit brought under the Federal Tort Claims Act, involving a federally-insured savings and loan institution supervised by federal regulators. The Supreme Court noted in Gaubert that although the statute from which the agency derived its authority provided formal means by which the agency officials could proceed, the agency was also authorized to use "supervisory mechanisms not specifically set forth in statute or regulation." Id. The Supreme Court thus concluded that informal action was permissible even where formal action was provided for by regulation.
 
 
 14
 Although the Gaubert case concerned the issue of agency liability under the Federal Tort Claims Act, its logic applies to the instant case. The NCUA has regulations in place for instituting formal proceedings against a credit union, but is also entitled to proceed by informal action. It is a matter for the discretion of the agency whether or not to proceed by formal action under the statute:
 
 
 15
 Whenever the Board determines that [an enumerated violation has been committed], the Board may serve upon such party a written notice of the Board's intention to remove such party from office or to prohibit any further participation, by such party, in any manner in the conduct of the affairs of any insured credit union.
 
 
 16
 12 U.S.C. Sec. 1786(g)(1) (emphasis added). Thus, the plaintiffs' claim that the NCUA was required to proceed under Sec. 1786(g) is without merit, since the NCUA was not required to institute such formal proceedings. In addition, the plaintiffs point to no authority that would preclude the NCUA officials from informally recommending measures to a credit union. See Gaubert, 499 U.S. at 330 ("[T]here is nothing in the language or structure of the statutes that prevented the regulators from invoking less formal means of supervision of financial institutions."). The district court was correct in finding that the NCUA agents were permitted to proceed by informal action and therefore were not required to provide the plaintiffs with the formal procedures outlined by the Credit Union Act.
 
 
 17
 Even when proceeding informally and outside of the strictures of the Credit Union Act, however, the federal NCUA officials are forbidden by the Fifth Amendment from depriving the plaintiffs of a property interest in their employment, assuming one existed, without due process. The plaintiffs' second argument, in essence, is that although the NCUA officials may be permitted to proceed informally, and the plaintiffs' terminations were actually carried out by the Credit Union board, i.e., by private actors, the NCUA agents coerced the board to such an extent that the NCUA agents themselves are responsible for the deprivation of their employment without due process.[4] In other words, the plaintiffs base their second argument on the tenets of procedural due process, claiming that the NCUA officials so influenced the Credit Union board of directors that the actions of the board in failing to provide them with notice and a hearing should be attributed to the NCUA agents. The NCUA agents, in turn, do not here contend that the plaintiffs were not entitled to notice and an opportunity to be heard, but rather argue that they were not responsible for the failure of the CNS Federal Credit Union to provide them with such notice and a hearing.
 
 
 18
 The actions of a private party may be considered government action where " 'there is a sufficiently close nexus between the State and the challenged action' that the actions by the private parties 'may be fairly treated as that of the State itself.' " Chan v. City of New York, 1 F.3d 96, 106 (2d Cir.1993) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)), cert. denied, 114 S.Ct. 472 (1993). "The purpose of th[e close nexus] requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982); see also Haavistola v. Community Fire Co. of Rising Sun, Inc., 6 F.3d 211, 215 (4th Cir.1993) (state action may be found where a close nexus or symbiotic relationship is shown between the state and the action of a regulated entity). More specifically, the actions of a private party may be deemed the actions of the government when the government forces a private actor to perform a task that would be unconstitutional if performed by the government itself. Andrews v. Federal Home Loan Bank of Atlanta, 998 F.2d 214, 217 (4th Cir.1993); see also Haavistola, 6 F.3d at 215 (4th Cir.1993) (state action may be found where the state coerces or "has provided such significant encouragement that the action must in law be deemed to be that of the state" (citations omitted)). However, the government "normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]." San Francisco Arts & Athletics, Inc. v. United States Olympic Committee, 483 U.S. 522, 546 (1987) (quoting Blum, 457 U.S. at 1004).
 
 
 19
 First, the plaintiffs have not shown that the NCUA officials coerced the Credit Union board to deprive them specifically of notice and a hearing before their terminations. The facts surrounding that part of the plaintiffs' claim are largely undisputed. The parties agree on the amount of time that was given to the Credit Union board by the NCUA agents to secure the resignations of Allen, Early, and Huggins. In addition, the plaintiffs do not dispute that the only statement made by the NCUA agents with regard to the time limit for firing Allen, Early, and Huggins was that, if the Credit Union board had not accomplished it by July 20, 1992, the terminations would be "automatic." Significantly, and fatal to the plaintiffs' claim in this regard, there is no evidence or allegation by the plaintiffs that the Credit Union requested more time in which to deal with the Allen, Early, and Huggins terminations, or that the Credit Union indicated that it did not have sufficient time to provide the plaintiffs with notice and an opportunity to be heard. In other words, as the district court found, the plaintiffs have not shown that the NCUA agents in any way prevented the Credit Union from providing them with due process, or even that the NCUA agents discouraged the holding of a hearing. Although the plaintiffs have submitted affidavits from various Credit Union officials who contend that they did not know that the plaintiffs were entitled to notice and a hearing, the NCUA officials cannot be held responsible for the ignorance of the plaintiffs' employers as to their rights. Thus, any factual dispute regarding whether the Credit Union officials knew that the plaintiffs had a right under their employment agreements to a hearing is not material for purposes of the instant summary judgment motion.
 
 
 20
 The remaining question, however, is whether the NCUA officials were so involved in the decision generally to terminate Allen, Early, and Huggins that the ultimate lack of notice and a hearing, although not specifically directed by the NCUA agents, may nevertheless be attributed to them. In other words, the plaintiffs argue that whether or not the NCUA agents are responsible for the lack of a hearing, their involvement in the termination decision was sufficient to state a due process violation. We find, however, that the plaintiffs' allegations do not support such a claim.
 
 
 21
 Again, we review the facts. The NCUA officials told the Credit Union board, at its July 6, 1992 meeting, that the board should vote to terminate Allen, Early, and Huggins. The potential consequences of the board's refusal to terminate the plaintiffs is a matter of dispute, but for purposes of the instant case, we assume that the Record of Action of the NCUA officials did, in fact, constitute a demand for the removal of Allen, Early, and Huggins. The plaintiffs do not contend, however, that the NCUA officials dictated the manner in which the terminations would be carried out. In fact, the NCUA officials were markedly uninvolved in the details of the plaintiffs' terminations; as the plaintiffs concede in their brief on appeal, the CNS Federal Credit Union board had a choice as to the way in which to effect the terminations of Allen, Early, and Huggins.
 
 
 22
 In support of their argument that the ultimate lack of procedural due process can be attributed to the NCUA federal agents, the plaintiffs point to several cases in which courts have addressed the issue of whether a private actor can be held to be a governmental actor for purposes of finding liability for constitutional violations. See, e.g., San Francisco Arts, 483 U.S. 522; Rendell-Baker v. Kohn, 457 U.S. 830 (1982); Haavistola, 6 F.3d 211; Andrews, 998 F.2d 214. Although we find those cases useful for purposes of defining the general parameters of government involvement in the conduct of private actors, they are simply not analogous to the instant situation, in which we address the liability of federal actors for the actions of private individuals. See Blum, 457 U.S. at 1003 (case in which the state is sued for the actions of private individuals is "obviously different" from the case in which the issue is whether private individuals have acted under color of state law). In addition, the plaintiffs point to Blum, 457 U.S. 991, in which the Supreme Court concluded that the state of New York could not be held responsible for the actions of private nursing homes in transferring and discharging patients, despite the fact that the state adjusted patients' Medicaid benefits as a consequence of the nursing homes' decisions. The Supreme Court stated in Blum: "[The plaintiffs] argue that the State 'affirmatively commands' the summary discharge or transfer of Medicaid patients who are thought to be inappropriately placed in their nursing facilities. Were this characterization accurate, we would have a different question before us." Blum, 457 U.S. at 1005. However, the Court did not have that question before it.
 
 
 23
 The plaintiffs' argument in favor of the NCUA agents' responsibility for the Credit Union's failure to give notice or a hearing does receive some support from the Ninth Circuit case of Merritt v. Mackey, 827 F.2d 1368 (9th Cir.1987). In Merritt, an employee of a private organization that contracted with a federal agency to provide drug and alcohol abuse services was terminated, after state and federal officials conditioned further funding for the organization on the employee being relieved of his duties. The federal agency officials demanded immediate termination. Id. at 1370. The employee filed an action against the involved federal official under the Fifth Amendment. The split Ninth Circuit panel, in finding that the plaintiff had a property interest that was protected by the Fifth Amendment and that the federal officials had acted to deny him that interest, noted that the fact that "[t]he requisite causal connection can be established not only by some kind of direct personal participation in the deprivation but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 1371; see also DiMartini v. Ferrin, 889 F.2d 922 (9th Cir.1989) (genuine issue of material fact existed in a Bivens action against an FBI agent, where an employee was fired from his job with a private employer after having refused to assist the federal agent in an investigation of certain individuals), op. amended, 906 F.2d 465 (9th Cir.1990), cert. denied, 501 U.S. 1204 (1991); Chernin v. Lyng, 874 F.2d 501 (8th Cir.1989) (grounds for relief in Bivens action against the United States Department of Agriculture officials were stated for the officials' actions in denying inspection services to a beef plant due to its employment of a felon); cf. Greene v. McElroy, 360 U.S. 474, 492 (1959) (stating, in dicta, that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment....").
 
 
 24
 However, the above cases spend a great deal of time addressing the nature and existence of the property right claimed by the plaintiff. In contrast, in the instant case, the existence of a property right is not now contested; the question as presented by the plaintiffs rather centers on the involvement of the federal officials in the lack of due process accorded to Allen, Early, and Huggins. Additionally, in Merritt, the federal official demanded the immediate termination of the plaintiff, and was in part responsible for the inadequate due process accorded to the plaintiff. The plaintiff's employers in that case requested information from the federal official concerning the termination, and asked later if they could rehire the plaintiff. The federal agent refused to respond. See Merritt, 827 F.2d at 1370. In contrast, Allen, Early, and Huggins have not alleged that the CNS Federal Credit Union was not provided with ample time in which to accord them due process, and have simply not shown the same degree of involvement in the denial of due process that was evident in Merritt.
 
 
 25
 The plaintiffs further cite to Korb v. Lehman, 919 F.2d 243 (4th Cir.1990), cert. denied, 502 U.S. 808 (1991), a case in which we affirmed the grant of qualified immunity to the defendants in a Bivens action, where it was not clearly established that the government defendants' actions in calling a private company to complain about a statement made by one of its employees who was later fired constituted a First Amendment violation. In Korb, we cited the Ninth Circuit's decision in Merritt, 827 F.2d at 1371, for the proposition that "[t]he actions of government officials which cause a private employee to be deprived of his employment give rise to a Bivens-type action against those officials for violation of due process." Korb, 919 F.2d at 248. Korb itself, however, was a First Amendment case decided on qualified immunity grounds. Therefore, Korb does not decide the plaintiffs' claim in the instant case, and to the extent that it makes statements regarding a due process claim, it relies on Merritt, which, as we have concluded, does not provide a firm basis for relief on the facts of the instant case.
 
 
 26
 While we acknowledge that a cause of action under Bivens may lie for the case in which federal officials have so involved themselves in a private actor's deprivation of property without due process that the action of the private actor could be attributed to the federal officials themselves, the allegations of the plaintiffs here simply do not state such a case. The NCUA officials were entitled to proceed by informal action in regulating the CNS Federal Credit Union. They did so by allegedly demanding that Allen, Early, and Huggins should be fired. However, the plaintiffs nowhere claim that the NCUA coerced, or even encouraged the Credit Union, to deny the plaintiffs notice and an opportunity to be heard. While we acknowledge the allegation that the NCUA exerted pressure on the Credit Union to terminate Allen, Early, and Huggins, the plaintiffs' claim is clearly based on the procedures by which their employment was terminated, and in order to withstand summary judgment, they must be able to show that the NCUA agents were ultimately responsible for any lack of procedural protections which the Constitution guarantees them. On the facts claimed in the instant case, the plaintiffs have not tackled that burden.
 
 III.
 
 27
 The grant of summary judgment to the NCUA agents and officials is
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 We use the word "termination" for purposes of our discussion, although the district court did not decide, and nor do we, whether the Allen and Early resignations may be considered terminations in actual effect
 
 
 [2]
 The district court did not decide the threshold question of whether Allen, Early, and Huggins had a cognizable property interest in their employment, see Board of Regents v. Roth, 408 U.S. 564, 576-77 (1972) (a person with a "legitimate claim of entitlement" to employment has a property interest that is protected by the due process clause), but rather held that even if the plaintiffs did have such an interest, the NCUA defendants were not responsible for the denial of that interest without due process. The NCUA agents concede that the existence of a property interest is in part a factual issue, and its resolution would require a remand to the district court. We will assume for purposes of our discussion that the plaintiffs could prove a property interest in their employment
 As an aside, we note that the record reflects that several of the defendants were not involved in all aspects of the recommendation to terminate the plaintiffs. However, the district court also did not decide which NCUA agents were sufficiently involved such that liability would attach if the plaintiffs were found to have made out a claim. Given our disposition of the case, we find no need to address the issue.
 
 
 [3]
 Normally, consideration of a claim of qualified immunity should first be addressed and, if made out, should foreclose consideration of the issues on the merits. Here, however, it was incumbent on the district court to investigate the merits before the qualified immunity question could be resolved
 
 
 [4]
 We note that the issue of whether the plaintiffs were accorded due process in the instant case is determined with reference to federal law, see Logan v. Zimmerman Brush Co., 455 U.S. 422, 432 (1982) ("[B]ecause 'minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action.' ") (quoting Vitek v. Jones, 445 U.S. 480, 491 (1980)). The requirements of federal due process may be minimal; notice and an opportunity to be heard may suffice. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). No one argues in the instant case that Allen, Early, or Huggins was provided with notice or an opportunity to be heard before termination