KING, Circuit Judge,
dissenting in part:
Sue Harris DeBauche, the Reform Party’s 1997 candidate for Governor of Virginia, alleged that two highly influential employees of Virginia Commonwealth University conspired with others to exclude her from a broadcast debate featuring the Democratic and Republican gubernatorial candidates. According to the First Amended Complaint, VCU president Eugene Trani and Distinguished Professor L. Douglas Wilder were motivated by DeBauche’s political views to discriminate against her.
DeBauche’s allegations, which must be taken as true at this initial stage of the proceedings, state a claim for relief against Trani and Wilder pursuant to 42 U.S.C. § 1983. By October 1997, it had been clearly established for at least twelve years that the First Amendment forbids the government to exclude from its forums those speakers with whom it disagrees, solely by reason of that disagreement.
Accordingly, I concur only in Part II of the majority’s opinion, which affirms the district court’s dismissal of DeBauche’s claims against Trani in his official capacity. I dissent from (1) the majority’s holding in Part III that Trani was entitled to qualified immunity with regard to the claims against him in his individual capacity; (2) the majority’s affirmance in Part IV of the district court’s dismissal of the claims against Wilder; and (3) the majority’s conclusion in Part V that Wilder, WRVA, and WNVT may be entitled to attorneys’ fees and court costs.[1]
I.
A.
We are, of course, compelled to view the facts alleged by DeBauche in the light most favorable to her. See Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999) (citation omitted). The district court’s dismissal of DeBauche’s complaint pursuant to Fed.R.Civ.P. 12(b)(6) can therefore be sustained “only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.” Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). More-over, in accordance with federal notice-pleading standards, we are bound to construe the complaint liberally. Anderson v. Foundation for Advancement, Educ. & Employment of Am. Indians, 155 *513 F.3d 500, 505 (4th Cir.1998) (citing Conley at 45-46, 78 S.Ct. 99).
The complaint alleges generally that “[t]he actions of the defendants with respect to Ms. DeBauches’s [sic] request for access, participation and expression in Debate Virginia ... were taken pursuant to the VCU’s policies, customs and/or practices and were authorized ... by the defendants or their agents functioning at a policy making level.” First Amended Complaint [hereinafter FAC] at ¶ 56. “[T]he defendants ... have discriminated against Ms. DeBauehe without a reasonable basis and have unlawfully discriminated against her based on her viewpoint....” FAC at ¶ 64. “[T]he defendants’ policies, customs and/or practices favor the speech of candidates of the major political parties over speech of candidates from minority political parties and thereby invert cherished First Amendment values promoting dissent, an open electoral process, and free and uninhibited public debate of political questions.” FAC at ¶ 71.
DeBauehe specifically alleged that Trani was responsible for implementing VCU’s policies, and that the enforcement of those policies in this case was achieved with the “active participation, knowledge and/or acquiescence” of Trani and the other defendants. FAC at ¶¶ 8, 68. Wilder, in particular, was alleged to have “had a subjective appreciation that [his] acts would deprive Ms. DeBauehe of her constitutional rights_” FAC at ¶ 84.
B.
The preceding allegations clearly state a § 1983 claim against Trani and Wilder. Taking the averments in the complaint at face value, both defendants would be liable as a “person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution....” 42 U.S.C. § 1983.
The majority nonetheless affirms the district court’s dismissal of DeBauche’s complaint against these defendants, holding that (1) Trani is entitled to qualified immunity on the ground that he violated no clearly established constitutional right; and (2) Wilder was not, as a matter of law, a state actor. Ante at 504-05, 506-08. Both conclusions are, in my judgment, erroneous.
1.
The majority identifies the right sought to be vindicated in this case as the First Amendment’s prohibition of “content-based or viewpoint-based decisions to exclude candidates from publicly sponsored debates.” Ante at 506. According to the majority, our sister circuit’s ruling in Chandler v. Georgia Pub. Telecomm. Comm’n, 917 F.2d 486 (11th Cir.1990), and the Supreme Court’s recent holding in Arkansas Educ. Television Comm’n v. Forbes, 523 U.S. 666, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998), rejecting arguments that third-party candidates must be included in political debates sponsored by public television stations, preclude the possibility that DeBauche’s right to be included in Debate Virginia was clearly established.
To the contrary, DeBauche’s right to inclusion became clear more than five years prior to Chandler, with the Supreme Court’s decision in Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). Cornelius employed the analytical framework developed two years earlier in Perry Educ. Ass’n v. Perry Local Educators’Ass’n, 460 U.S. 37,103 S.Ct. 948, 74 L.Ed.2d 794 (1983), with respect to the “recurring and troublesome issue of when the First Amendment gives an individual or group the right to engage in expressive activity on government property.” Cornelius, 473 U.S. at 815, 105 S.Ct. 3439 (Blackmun, J., dissenting).
Under Perry and Cornelius, it must first be determined whether the property to *514 which the speaker desires access is a traditional public forum, a designated public forum, or a nonpublic forum. Perry, 460 U.S. at 45-46, 103 S.Ct. 948; Cornelius, 473 U.S. at 800, 802, 105 S.Ct. 3439. If the forum is public, either by tradition or otherwise, speakers may only be excluded to serve a compelling governmental interest. Cornelius, 473 U.S. at 800, 105 S.Ct. 3439. Conversely, if the forum is nonpublic (like Debate Virginia), restrictions on speech need only be reasonable in light of the property’s intended purpose. Id. at 806, 105 S.Ct. 3439. A speaker may properly be excluded from a nonpublic forum if, for example, she is not a member of the class of speakers for whose benefit the forum was created, or if she wishes to address a topic not within the purpose of the forum. Id.
Even in the case of a nonpublic forum, however, it is abundantly clear that a speaker may not be excluded on the basis of her viewpoint. As Justice O’Connor stated in Cornelius, “the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject.” Id. at 806, 105 S.Ct. 3439. Moreover, “[t]he existence of reasonable grounds for limiting access to a nonpublic forum ... will not save a regulation that is in reality a facade for viewpoint-based discrimination.” Id. at 811, 105 S.Ct. 3439 (citations omitted).[2]
DeBauche alleged that Trani, acting on behalf of a state university, excluded her from Debate Virginia to prevent her from publicly expressing her political views. She was indisputably a member of the class of speakers, i.e., ballot-qualified candidates for the office of Governor of Virginia, for whom the forum was created. There is likewise no dispute that De-Bauche wished to speak on the same topics as her Democratic and Republican challengers. Consequently, under Cornelius, DeBauche stated a viable § 1983 claim upon which she must prevail if she can adduce sufficient proof that she was indeed discriminated against on the basis of her viewpoint.
Neither Chandler nor Forbes altered the basic rule of Cornelius. The debates at issue in those cases were organized and broadcast by state-owned television stations. Although Justice Kennedy’s opinion in Forbes acknowledged some uncertainty as to whether the forum doctrine should apply in the “very different context of public television broadcasting,” Forbes, 523 U.S. at 673, 118 S.Ct. 1633, the Court ultimately decided that the doctrine should apply, at least with regard to political debates. Id. at 675, 118 S.Ct. 1633 (“Although public broadcasting as a general matter does not lend itself to scrutiny under the forum doctrine, candidate debates present the narrow exception to the rule.”).
But even a broadcaster cannot do what Trani is alleged to have done in this case:
[T]he requirement of neutrality remains; a broadcaster cannot grant or deny access to a candidate debate on the basis of whether it agrees with a candidate’s views. Viewpoint discrimination in this context would present not a calculated risk, ... but an inevitability of skewing the electoral dialogue.... The debate’s status as a nonpublic forum did not give [the defendant] unfettered power to exclude any candidate it wished.
*515 Id. at 676, 682, 118 S.Ct. 1633 (citation, internal quotation marks, and brackets omitted); accord Chandler, 917 F.2d at 489 (“[W]e can safely predict that the use of state instrumentalities to suppress unwanted expressions in the marketplace of ideas would authorize judicial intervention to vindicate the First Amendment.”).
At bottom, neither VCU nor Trani is a broadcaster. There is no justification, then, for the majority’s assertion that either Chandler or Forbes — pertaining to broadcasters — announced the standard against which Trani was expected to measure his conduct. That standard was set much earlier, in Cornelius. Viewed in their proper context, Chandler and Forbes merely extended the rule of Cornelius to encompass the peculiar realm of public television and radio broadcasters that organize political debates.
It is no answer to say that Cornelius was not a debate case, and therefore has no application here. Cornelius was a forum case, and a political debate is perhaps the quintessential forum. The law requires that qualified immunity be denied government officials who transgress those rights “of which a reasonable person would have known.” Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir.1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). A reasonable person in Trani’s position would have been aware that Cornelius forbade the type of viewpoint discrimination in which he is alleged to have engaged.[3] Consequently, I must conclude that Trani is not entitled to qualified immunity on the face of the complaint.
2.
The majority asserts that Wilder, in his role as a radio personality and political figure, cannot be considered a state actor with regard to his involvement in Debate Virginia. The majority overlooks, however, that Wilder was also a contract employee of VCU. The materials submitted below reveal that Wilder was appointed in 1995 to the position of Distinguished Professor in VCU’s Center for Public Policy. See Appendix to Plaintiffs Opposition to the State Defendants’ Motion to Dismiss, at 16 (J.A. 57). Indeed, the record contains no fewer than eight letters pertaining to Debate Virginia that were drafted by Wilder or his staff on VCU’s letterhead. During DeBauche’s ongoing efforts to be included in the debate, she and other members of the Virginia Reform Party attempted to telephone Wilder at his VCU offices. FAC at ¶¶ 46, 48.
Although the district court granted Wilder’s motion to dismiss without considering any materials beyond the complaint, we are not bound to follow the same path. See McNair v. Lend Lease Trucks, Inc., 62 F.3d 651, 656 (4th Cir.1995) (court of appeals has the discretion to note a critical fact contained in a document submitted to, but not considered by, the district' court in ruling on a motion under Rule 12(b)(6), where the parties are aware that materials outside the pleadings are before the court), reasoning adopted by McNair v. Lend Lease Trucks, 95 F.3d 325, 328 n. 3 (4th Cir.1996) (en banc) (vacating remainder of panel decision).
Absent discovery, it is impossible to ascertain the extent to which Wilder acted on behalf of VCU with regard to the organization and administration of Debate Virginia. Insofar as Wilder was indeed attempting to further the interests of his university employer, he was plainly engaging in state action within the contemplation of § 1983, and is therefore potentially lia *516 ble to DeBauche.[4] The question cannot, in any event, be resolved as a matter of law on a motion to dismiss.
II.
Because I would reverse the district court’s dismissal of DeBauche’s § 1983 claim against Wilder, it follows that I would likewise reverse the concomitant award of fees and costs. Though I agree with the majority that WRVA and WNVT cannot be deemed state actors in this case, see supra note 1, I do riot think that DeBauche’s assertions to the contrary are so “groundless or without foundation” as to justify a fee award under § 1988(b). Ante at 510 (noting standard). Particularly in light of Wilder’s professional association with WRVA, I would not discount the possibility that DeBauche could have credibly alleged that Wilder coerced the radio station to adopt his position with regard to DeBauche’s exclusion from the debate, thereby satisfying the first Andrews scenario, see ante at 507-08 (noting that a private party may engage in state action where “the state has coerced the private actor to commit an act that would be unconstitutional if done by the state”).[5]
III.
This is an important case that has come to a premature conclusion. State colleges and universities are places in which the infinite diversity of human thought should be celebrated. Such institutions ought not be in the business of suppressing divergent viewpoints, a concept antithetical to the Constitution and to the cherished values upon which this nation was founded. We can only hope that, in this case, Sue Harris DeBauche was not silenced on account of her views as to how the Commonwealth of Virginia could best be governed. Unfortunately, as the result of the majority’s decision today, we may never know.

. In addition to concurring in Part II of the majority’s opinion, I agree with its affirmance in Part IV of the district court’s dismissal of the claims against WRVA and WNVT, based on DeBauche’s failure to sufficiently allege that the broadcasters engaged in state action. I also agree with the majority’s holding in Part V that the filing of a complaint cannot support an award of sanctions under 28 U.S.C. § 1927.

. Cornelius involved a challenge by certain legal defense funds to their exclusion from the Combined Federal Campaign (CFC), an annual charity drive targeted at federal employees. The plaintiffs maintained that the prohibition against their participation in the CFC violated their First Amendment right to solicit charitable contributions. The Court held that the CFC was a nonpublic forum, and that the government could reasonably exclude controversial groups whose participation would disrupt the workplace and cause the drive to be less successful. The Court nevertheless remanded the case for the lower courts to determine whether the plaintiffs’ exclusion was motivated by the government's desire to .suppress their viewpoints.

. It is likewise immaterial that WRVA and WNVT were alleged to have participated in the decision to exclude DeBauche. Although these private broadcasters are not state actors and are thus impervious to this lawsuit, ante at 507-09 (citing Andrews v. Federal Home Loan Bank of Atlanta, 998 F.2d 214 (4th Cir.1993)), Trani cannot cloak himself in their invulnerability. The mere happenstance that broadcasters are present on the periphery does not limit our consideration of the relevant precedents to Forbes and Chandler.

. For the reasons I have expressed supra in Section I.B.I., Wilder — like Trani — would not be entitled to qualified immunity on the facts as alleged by DeBauche.

. Nor do I believe that sanctions pursuant to Rule 11 are appropriate in this case. Given the seriousness of the alleged conduct, the Supreme Court's consistent condemnation of viewpoint discrimination, and the unusual facts present here, DeBauche could make a nonfrivolous argument for the modification or extension of existing law to hold the broadcasters liable as state actors.