**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SUE HARRIS DEBAUCHE,
Plaintiff-Appellant,

v.

EUGENE TRANI; LAWRENCE DOUGLAS
WILDER; CLEAR CHANNEL RADIO,
INCORPORATED, t/a WRVA, a Nevada
Corporation; CENTRAL VIRGINIA
EDUCATIONAL TELECOMMUNICATIONS

CORPORATION, t/a WNVT,
Defendants-Appellees,

and

VIRGINIA COMMONWEALTH
UNIVERSITY,
Defendant.

ACLU FOUNDATION OF VIRGINIA,
Amicus Curiae.

No. 98-1658

SUE HARRIS DEBAUCHE,
Plaintiff-Appellant,

v.

LAWRENCE DOUGLAS WILDER; CLEAR
CHANNEL RADIO, INCORPORATED, t/a
WRVA, a Nevada Corporation;

No. 98-2517

CENTRAL VIRGINIA EDUCATIONAL
TELECOMMUNICATIONS CORPORATION,
t/a WNVT,
<u>Defendants-Appellees,</u>

and
VIRGINIA COMMONWEALTH
UNIVERSITY; EUGENE TRANI,
<u>Defendants.</u>

ACLU FOUNDATION OF VIRGINIA,
<u>Amicus Curiae.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-97-770-3)

Argued: March 3, 1999

Decided: September 15, 1999

Before WIDENER, NIEMEYER, and KING, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Judge Niemeyer wrote the opinion, in which Judge Widener
joined. Judge King wrote a separate opinion, concurring in part and
dissenting in part.

_____

**COUNSEL**

**ARGUED:** James Jeffrey Knicely, KNICELY & COTORCEANU,
P.C., Williamsburg, Virginia, for Appellant. Alison Paige Landry,
Assistant Attorney General, OFFICE OF THE ATTORNEY GEN-

ERAL, Richmond, Virginia; John Samuel Martin, HUNTON & WIL-LIAMS, Richmond, Virginia; Andrew Gray Mauck, MAYS & VALENTINE, L.L.P., Richmond, Virginia; Lawrence Douglas Wilder, Jr., WILDER & GREGORY, Richmond, Virginia, for Appellees. **ON BRIEF:** Thomas Stephen Neuberger, THOMAS S. NEUBERGER, P.A., Wilmington, Delaware; John W. Whitehead, Stephen H. Aden, THE RUTHERFORD INSTITUTE, Charlottesville, Virginia, for Appellant. Mark L. Earley, Attorney General of Virginia, Ashley L. Taylor, Jr., Deputy Attorney General, Ronald C. Forehand, Senior Assistant Attorney General, William E. Thro, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellant Trani. R. Hewitt Pate, HUNTON & WIL-LIAMS, Richmond, Virginia; Robert L. Brooke, MAYS & VALEN-TINE, L.L.P., Richmond, Virginia, for Appellees WNVT and WRVA. Roger L. Gregory, Laura M. Hillenbrand, WILDER & GREGORY, Richmond, Virginia, for Appellee Wilder. Randal M. Shaheen, Christopher F. Winters, ARNOLD & PORTER, Washington, D.C., for Amicus Curiae.

_____

**OPINION**

NIEMEYER, Circuit Judge:

During the 1997 gubernatorial election campaign in Virginia, L. Douglas Wilder, a radio talk show host with radio station WRVA and former governor of Virginia, organized a political debate between the Republican and Democratic candidates for governor at Virginia Commonwealth University ("VCU"). The debate, dubbed "Debate Virginia," was broadcast on radio station WRVA and on television station WNVT, as well as on other stations. Because she was not invited to participate, Sue Harris DeBauche, the Virginia Reform Party candidate for governor, filed this action under 42 U.S.C. § 1983, alleging that the defendants violated her constitutional rights to free speech and equal protection.

The district court dismissed DeBauche's action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on various grounds as applicable to the several defendants, including sovereign immunity,

3

qualified immunity, and the absence of "state action." The court also assessed a portion of defendants' attorneys fees and costs against both DeBauche and her attorneys based on the action's lack of merit.

For the reasons that follow, we affirm the district court's dismissal order but vacate the order shifting fees and costs for reconsideration in light of this opinion.

I

On October 15, 1997, a few weeks before the 1997 gubernatorial election in Virginia, DeBauche filed the complaint in this case under 42 U.S.C. § 1983, alleging that she had been excluded from Debate Virginia in violation of her rights under the First, Ninth, and Fourteenth Amendments to the United States Constitution. She named as defendants: VCU, where the debate had occurred; its president, Eugene Trani, both individually and in his official capacity; and Douglas Wilder, who initiated the debate by inviting the Republican and Democratic candidates to a radio debate. DeBauche requested a declaratory judgment that her rights had been violated, injunctive relief, and compensatory and punitive damages in an unspecified amount. After VCU and Trani filed a motion to dismiss, DeBauche filed an amended complaint to modify some of the allegations and to add as defendants the owners of the radio station and the television station which sponsored the debate: Clear Channel Radio, Inc., the owner of radio station WRVA ("WRVA"), and Central Virginia Educational Telecommunications, Inc., the owner of television station WNVT ("WNVT").

In her amended complaint, DeBauche alleged that in April 1997, Wilder invited Republican gubernatorial nominee, James S. Gilmore, III, and Democratic nominee, Donald S. Beyer, Jr., to a radio debate in which each could address the issues of the campaign and his record. Several months later, in July 1997, Wilder confirmed in writing "that negotiations were concluded relative to Debate Virginia" and that it would be "jointly sponsored" by WRVA, WNVT, and VCU. The amended complaint alleges that VCU and Trani offered, and Wilder accepted, VCU as a place to hold the debate and that VCU and Trani contributed "VCU personnel, staff and other resources to plan, promote, manage and execute the debate." As DeBauche character-

4

ized the roles of the parties, Wilder "served as convener and moderator of Debate Virginia," and all of the other defendants "co-sponsored, planned, promoted, managed, executed, and paid" for it. The debate took place on October 6, 1997.

After arrangements for the debate had been completed and three weeks before the debate, DeBauche became "duly qualified" with the State Board of Elections as the Reform Party candidate for governor, having been selected at a meeting of the Virginia Reform Party State Central Committee on September 14, 1997. Between September 15 and October 6, DeBauche alleged that she and other Reform Party members placed telephone calls to Wilder at various telephone numbers and to Debate Virginia at its toll-free number for the purpose of having DeBauche included in the debate. DeBauche also sent e-mails to Debate Virginia's website for the same purpose. DeBauche alleged that she received no responses to her inquiries and that all efforts to participate were unsuccessful. Shortly after the debate, DeBauche "made a written demand to the defendants VCU and Trani that they schedule a gubernatorial debate including all three candidates before the November 4, 1997, election," but VCU and Trani rejected this demand on October 24, 1997.

DeBauche alleged that Debate Virginia constituted a designated public forum at which she was entitled under the First Amendment to appear and to express her views and the views of the Reform Party. To that end, she purported to bring the action not only on her own behalf but also on behalf of "the individual members of [the Virginia Reform Party] and on behalf of the Party." Alternatively, she alleged that even if the debate was a nonpublic forum, she and the Reform Party members were discriminated against "without a reasonable basis." Specifically, she claimed that "[b]ut for the actions of the defendants" in not including her in Debate Virginia, she would have received "at least 15% of the statewide vote in the [1997] election."

In an attempt to satisfy the requirements of 42 U.S.C. § 1983, DeBauche alleged that VCU and Trani were "state actors" and that Wilder, WRVA, and WNVT "may fairly be said to be state actors because they worked jointly on Debate Virginia with the defendants VCU and Trani." She alleged that because Wilder, WRVA, and

5

WNVT "have jointly engaged with state officials in the challenged actions, . . . they [were] acting under color of law."

DeBauche requested relief including: (1) a declaratory judgment that the defendants' actions deprived DeBauche, the Party, and the Party's members of constitutional rights, (2) an injunction barring the defendants from excluding DeBauche and "any other future Party candidate" from any future debate, (3) compensatory and punitive damages, and (4) attorneys fees. In addition, DeBauche asked the court to "review and consider" the results of the 1997 gubernatorial election to determine whether other equitable relief was warranted, including "declaring that [DeBauche] would have received 15% of the statewide vote" and directing that the State Board of Elections be joined "to certify [Virginia Reform Party] candidates . . . to be placed on the ballot in the next Virginia gubernatorial election."

The district court granted the defendants' motions to dismiss the amended complaint on April 13, 1998, on various grounds. At the outset, the court rejected the defendants' contention that DeBauche's claims were moot because "[i]t is more than conceivable that De-Bauche as a Reform Party candidate for a political office will be excluded from a [future] debate including only Democratic and Republican candidates and involving a state university." The court concluded, however, that DeBauche lacked standing to assert claims on behalf of the Reform Party. With respect to the claims against the state actors, VCU and Trani, the district court found that the claims were barred by the Eleventh Amendment. With respect to the claims against Trani in his individual capacity, the court found that De-Bauche failed to allege sufficient state action and that Trani was entitled to qualified immunity. And finally, with respect to the private defendants, Wilder, WRVA, and WNVT, the court found that they were not state actors and that they were not sufficiently intertwined with state actors to make their conduct state action.

In a subsequent order, the district court also awarded defendants Wilder, WRVA, and WNVT attorneys fees and costs under 42 U.S.C. § 1988(b), in the amount of $48,477, concluding that DeBauche's claims against them were "without foundation" and "baseless and unreasonable." The court also ordered that DeBauche's counsel be jointly and severally liable under 28 U.S.C. § 1927, in the amount of

6

$37,859, for the awards made to WRVA and WNVT. The court inferred bad faith on the part of DeBauche's attorneys because "it was evident that DeBauche was tying the private broadcasting defendants with a tenuous string to Virginia Commonwealth University in order to show they were exhibiting state action." The court observed that the liability for DeBauche's attorneys was particularly appropriate "in light of DeBauche's [impecunious] financial situation and the Court's question as to how her lawsuit has been funded."

This appeal followed.

II

The district court dismissed the claims against VCU and against Trani in his official capacity as president of VCU on the basis that they were barred by the Eleventh Amendment. DeBauche does not challenge the district court's decision as to VCU, but she does contend that Trani does not have Eleventh Amendment immunity from her claims for injunctive and declaratory relief because "official-capacity actions for prospective relief are not treated as actions against the State." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (citing Ex parte Young, 209 U.S. 123 (1908)). The Ex parte Young exception, however, applies only when there is an ongoing violation of federal law that can be cured by prospective relief. It does not apply when the alleged violation of federal law occurred entirely in the past. See Green v. Mansour, 474 U.S. 64, 68 (1985) (observing that "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment"); Republic of Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir. 1998) (noting that the Ex parte Young exception applies only when "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective" (citations omitted)).

In her amended complaint, DeBauche alleged that Trani conspired to keep her out of Debate Virginia in 1997 and that the defendants, including Trani, "will either individually or jointly sponsor, plan, promote, manage or hold statewide debates in the future from which candidates of the [Virginia Reform] Party will be excluded and to which only Democratic and Republican candidates will be invited." While we must, at this motion-to-dismiss stage of the case, accept as true the

7

allegations of DeBauche's complaint, see Conley v. Gibson, 355 U.S. 41, 47-48 (1957), her allegations that she or Reform Party candidates will be excluded from future debates do not, as a matter of law, allege an ongoing violation of federally-protected rights. Instead, they amount to conjecture regarding discrete future events. Mere conjecture is insufficient to transform a one-time event into a continuing governmental practice or an ongoing violation. Accordingly, DeBauche's claim against Trani in his official capacity does not fall within the Ex parte Young exception, and we have no reason not to apply the traditional principles of Eleventh Amendment immunity to dismiss the claims against Trani in his official capacity.

III

To the extent that DeBauche alleges that Trani, in his individual capacity, violated her constitutional rights, Trani is entitled to qualified immunity if his conduct involved performance of discretionary duties and did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Buonocore v. Harris, 65 F.3d 347, 353 (4th Cir. 1995).

The constitutional violation alleged in this case arose from DeBauche's contention that she was excluded from Debate Virginia based upon the "content or viewpoint" expressed by her candidacy. Assuming solely for purposes of this argument that VCU and Trani, by providing the location for the debate, were in fact responsible for the selection of the participants and that the exclusion of DeBauche was viewpoint-based, Trani would nonetheless be entitled to qualified immunity because he could not have known at the time that such conduct was constitutionally prohibited. The question raised under these assumptions would be whether a candidate debate held by a state entity was a "public forum" such that viewpoint discrimination would be restricted by the Constitution.

This issue was decided for the first time in Arkansas Educational Television Commission v. Forbes, 523 U.S. 666 (1998), after Debate Virginia had taken place. In Forbes, which held that a decision to exclude a minor party candidate from a debate sponsored by a public television station was subject to First Amendment review in a non-

8

public forum category, the Court noted that it was carving out, for the first time, a "narrow exception to the rule" that public broadcasters' programming is generally not subject to scrutiny under the public forum doctrine. Id. at 675. Prior to Forbes, there was no clearly established constitutional prohibition on making content-based or viewpoint-based decisions on whom to include in publicly sponsored debates. Indeed, even under Forbes, a government-sponsored debate can exclude candidates as long as the exclusion is a"reasonable, viewpoint-neutral exercise of journalistic discretion." Id. at 683. And prior to Forbes, the Eleventh Circuit, in 1990, had upheld the decision of a Georgia public television station to include only the Republican and Democratic nominees, and to exclude the Libertarian Party nominees, in debates it was sponsoring, even though the court found that that decision was "content-based." Chandler v. Georgia Pub. Telecomm. Comm'n, 917 F.2d 486, 488-89 (11th Cir. 1990).

Because it was not clearly established in the fall of 1997 that the First Amendment restricted content-based or viewpoint-based decisions to exclude candidates from publicly sponsored debates, the district court correctly afforded Trani qualified immunity.

IV

The district court dismissed the private parties-- Wilder, WRVA, and WNVT -- because a claim under 42 U.S.C. § 1983 requires that the defendant be fairly said to be a state actor and DeBauche failed to allege facts that would have permitted the court to conclude that these defendants were state actors. We agree with the district court's conclusion.

DeBauche's complaint, which is based on 42 U.S.C.§ 1983, alleges that all of the defendants denied her federal constitutional rights under color of law because VCU and Trani were state actors and Wilder, WRVA, and WNVT were de facto state actors. She acknowledges that in April 1997, before VCU and Trani were involved, Wilder initiated the debate by inviting the Republican and Democratic gubernatorial candidates to a radio debate, but she contends that Wilder's later cooperation with VCU and Trani, who were concededly state actors, made his conduct state action. As she maintains, "VCU contributed substantial, extraordinary funding and other

9

institutional resources to affect all aspects of Debate Virginia." As to the broadcasting companies, she states that "WNVT and WRVA engaged in unconstitutional political manipulation and viewpoint discrimination together with VCU and defendants Trani and Wilder . . . all in furtherance of a mutually beneficial state-sponsored and funded enterprise." From these allegations, she argues that the joint involvement of private and public bodies in discriminatory action, "even private action backed-up or endorsed by a public body, constitutes state action for purposes of the Fourteenth Amendment."

To implicate 42 U.S.C. § 1983, conduct must be "fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); see also Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (observing that § 1983's "under color" of law requirement is equivalent to the "state action" requirement of the Fourteenth Amendment (citing United States v. Price, 383 U.S. 787, 794 n.7 (1966))). The person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions. See, e.g., Edmonson v. Leesville Concrete Co., 500 U.S. 614, 620 (1991) ("Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints"); Lugar, 457 U.S. at 941 (noting that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a `state actor' for purposes of the Fourteenth Amendment"); Adickes v. S. H. Kress & Co., 398 U.S. 144, 170-71 (1970) (holding that a private party that engaged in racial discrimination as part of a state-enforced custom would be a state actor for purposes of 42 U.S.C. § 1983). Thus, the Supreme Court has held that private activity will generally not be deemed "state action" unless the state has so dominated such activity as to convert it into state action: "Mere approval of or acquiescence in the initiatives of a private party" is insufficient. Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). Stated differently, to become state action, private action must have a "sufficiently close nexus" with the state that the private action "`may be fairly treated as that of the State itself.'" American Mfrs. Mut. Ins. Co. v. Sullivan, 119 S. Ct. 977, 986 (1999) (quoting Blum, 457 U.S. at 1004). And the establishment of the close nexus "depends

10

on whether the State `has exercised coercive power or has provided such significant encouragement . . . that the choice must in law be deemed to be that of the State.'" Id.

DeBauche maintains that the joint participation of public and private actors in organizing and conducting Debate Virginia transformed the private actors' conduct into "state action," relying principally on Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961) (defining a "joint participation" test for finding state action). But De-Bauche's argument does not account for the actual holding in Burton nor the Supreme Court's later refinements which explain what is required to convert private action into state action. In Burton, a government agency leased space in a public parking garage to a restaurant that discriminated against blacks. The Court identified a symbiotic relationship in which "profits earned by discrimination not only contribute[d] to, but also [were] indispensable elements in, the financial success of a governmental agency." Id. at 724 (emphasis added). In the "peculiar facts [and] circumstances present" in Burton, id. at 726, the Supreme Court concluded that"[t]he State ha[d] so far insinuated itself into a position of interdependence" with the restaurant that the joint participation of public and private actors made the private party's conduct state action restricted by the Fourteenth Amendment. Id. at 725. That holding, however, certainly does not stand for the proposition that all public and private joint activity subjects the private actors to the requirements of the Fourteenth Amendment. See Blum, 457 U.S. at 1011; Jackson v. Metropolitan Edison Co., 419 U.S. 345, 357-58 (1974); see also Lebron v. National R.R. Passenger Corp., 513 U.S. 374, 409 (1995) (O'Connor, J., dissenting) (noting that Burton's holding was "quite narrow" and questioning its continuing viability). In its more recent discussion of the subject, the Supreme Court articulates the numerous limits to the joint participation test, noting that "Burton was one of our early cases dealing with `state action' . . . and later cases have refined the vague `joint participation' test embodied in that case." Sullivan , 119 S. Ct. at 988.

Applying the principles elucidated and refined by the Supreme Court, we have recognized four exclusive circumstances under which a private party can be deemed to be a state actor:

> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2)

11

when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

Andrews v. Federal Home Loan Bank of Atlanta, 998 F.2d 214, 217 (4th Cir. 1993). "If the conduct does not fall into one of these four categories, then the private conduct is not an action of the state." Id.

The facts alleged in DeBauche's amended complaint show that Wilder, a radio talk show host, first invited the Republican and Democratic candidates for governor to debate campaign issues on his radio talk show. When VCU offered to provide a place for the debate on its campus, Wilder accepted, so that, as finally arranged, Wilder "convened and moderated" the debate, which took place at VCU's campus and which was broadcast on radio and television by WRVA, WNVT, and other stations. The complaint alleged that all of the defendants "co-sponsored, planned, promoted, managed, executed and paid for" the debate.

However these facts are characterized, the arrangement described between the state actors and private actors does not transform the private actors' conduct into state action. As distinguished from Burton, DeBauche's amended complaint does not describe facts that suggest interdependence such that VCU relied on the private defendants for its continued viability. While the state actors, VCU and Trani, worked with Wilder in the organization and promotion of the debate, their conduct cannot be thought to have controlled his conduct to such an extent that his conduct amounted to a surrogacy for state action. Moreover, they did not control the stations which only agreed to broadcast the debate. More pertinently, when we apply Andrews to these facts, we conclude that none of the four circumstances that we identified in Andrews exists in this case.

First, DeBauche has not alleged that VCU or any other arm of the state coerced any of the private defendants into committing an act that the state could not constitutionally undertake. The alleged unconstitutional act -- the failure to invite DeBauche to participate in the debate

12

-- resulted, according to DeBauche's amended complaint, from the initial, independent decision by Wilder to invite only Gilmore and Beyer to the debate. There is no suggestion that Wilder's decision to invite only them, or the stations' decision to broadcast the debate, was the result of coercion by VCU or Trani. In fact, the complaint states that the three private party defendants were "willful participants" in the organization of the debate.

The second Andrews circumstance is also not present in this case. DeBauche does not allege that VCU or any other state actor sought to evade a clear constitutional duty by delegating responsibility to a private party. First, there was no allegation of delegation. According to the complaint, Wilder decided on his own to host a debate and VCU offered, months later, to provide a site on its campus. VCU agreed to assist Wilder with his project, but there is no allegation that VCU delegated any of its governmental responsibilities to him or to the broadcast stations. Second, there are no allegations that suggest that VCU was using the private parties to evade a"clear constitutional duty." Indeed, nothing that was done regarding Debate Virginia violated any constitutional right that was clearly established at the time the debate was organized. See Part III, supra.

The third Andrews circumstance -- when"the state has delegated a traditionally and exclusively public function to a private actor" -- is present only when the function at issue is "traditionally the exclusive prerogative of the State." United Auto Workers v. Gaston Festivals, Inc., 43 F.3d 902, 906 (4th Cir. 1995) (internal quotation marks and citations omitted) (holding that a private entity which organized a public festival held on public streets and sidewalks and supported in part with public money was not engaged in state action). This category is very narrow. See id. at 907. For example, the operation of a town has been held to be a function that is traditionally the exclusive prerogative of government. See Marsh v. Alabama, 326 U.S. 501 (1946). The hosting of political debates, conversely, is not within the exclusive prerogative of the government. While public broadcasters and state universities often sponsor such debates, so do private broadcasters and private universities. Indeed, hosting debates could never be the exclusive prerogative of the government because the First Amendment protects private parties' rights to put on (and select the content of) debates. See Hurley v. Irish-American Gay, Les-

13

bian & Bisexual Group of Boston, Inc., 515 U.S. 557, 569-70 (1995) (holding that "a private speaker does not forfeit constitutional protection simply by combining multifarious voices"); Turner Broadcasting Sys., Inc. v. FCC, 512 U.S. 622, 636 (1994).

Finally, the fourth Andrews circumstance is completely irrelevant as DeBauche does not allege that VCU or any other arm of the state enforced any right of any of the private party defendants.

Because the allegations of DeBauche's amended complaint make it quite clear that the actions attributable to Wilder, WRVA, and WNVT amounted to their independently-motivated, private actions, rather than "state action," DeBauche fails to state a claim under 42 U.S.C. § 1983 against the private defendants for which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

V

Finally, DeBauche challenges the district court's order awarding attorneys fees and costs to Wilder, WRVA, and WNVT under 42 U.S.C. § 1988(b)**1** and holding her attorneys jointly and severally responsible for the fees and costs awarded to WRVA and WNVT under 28 U.S.C. § 1927.**2**

The district court found that DeBauche's attempt "to make [Wilder] a state actor because VCU only helped execute the debate was baseless and unreasonable." Similarly, the court concluded that DeBauche's suit against WRVA and WNVT was "without foundation."

_____

**1** Section 1988(b) provides in relevant part:

> In any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

**2** Section 1927 provides in relevant part:

> Any attorney or other person admitted to conduct cases in any court . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

14

These two broadcasters "were not even alleged to have played a role in the decision to exclude [DeBauche] from the debate." For these reasons, the court exercised the discretion conferred by 42 U.S.C. § 1988(b) to award Wilder $10,618.20 in fees and costs; WRVA, $13,922.80; and WNVT, $23,935.70.

In addition to the award under § 1988, the court held DeBauche's attorneys jointly and severally liable for the awards made in favor of the two broadcast stations under 28 U.S.C. § 1927. The court noted that

> it was evident that DeBauche was tying the private broadcasting defendants with a tenuous string to Virginia Commonwealth University in order to show they were exhibiting state action. It was clear from the beginning that Wilder alone made the decision to exclude her from Debate Virginia and that the private defendants and the University were not in some collaboration about that Wilder decision.

The court concluded that DeBauche's attorneys' actions against the broadcast stations were "an unreasonable and intentional pursuit of a frivolous position which warrants an award under Section 1927, particularly in light of DeBauche's financial situation and the Court's question as to how her lawsuit has been funded."

DeBauche contends that the private defendants did not make "the necessary evidentiary showing" to justify an award under § 1988. In addition, she maintains that the § 1988 award was improper because the court did not consider her inadequate financial means to pay such an award. She provided the court with her income tax returns for the three years preceding the award, showing that in 1995 her adjusted gross income was $17,639; in 1996, $15,146; and in 1997, $8,982. As to the § 1927 award, DeBauche argues that the statutory requirements that the proceedings be multiplied unreasonably and vexatiously could not be met as a matter of law because the conduct upon which the award was based was the mere filing of an amended complaint. We address these points in order.

A

Section 1988(b) confers discretion on courts to award attorneys fees to the prevailing party in an action brought under, inter alia, 42

15

U.S.C. § 1983. When the prevailing party is the defendant, the attorneys fees should be awarded if the court finds "`that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" Hughes v. Rowe, 449 U.S. 5, 14 (1980) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978)). Stated otherwise, "[t]he plaintiff's action must be meritless in the sense that it is groundless or without foundation," but there need not be any subjective bad faith on the part of the plaintiff. Id.

While we might be persuaded that the record does not show that DeBauche brought her action in bad faith, we cannot agree that the district court abused its discretion in finding her claim to be "groundless or without foundation." Both the Supreme Court and our court have been very clear about two relevant points of law: (1) the constitutional protections of free speech and equal protection apply only against governmental action, and not against private action, see Edmonson, 500 U.S. at 619; Hudgens v. NLRB , 424 U.S. 507, 513 (1976); Andrews, 998 F.2d at 216, and (2) the circumstances where a private party and a government are so intertwined that the private conduct can be considered "state action" for constitutional purposes are limited to a few defined circumstances, see Edmondson, 500 U.S. at 620; Andrews, 998 F.2d at 217. The Supreme Court has stated that for a private party's decision to be considered"state action," there must be so much coercion or encouragement that "the choice must in law be deemed to be that of the State." Blum , 457 U.S. at 1004 (citations omitted).

The amended complaint that DeBauche filed makes it clear that the choice not to include DeBauche in Debate Virginia was made by Wilder, not by VCU, and it was not the product of any coercion by the state. Indeed, the invitations to the Republican and Democratic candidates were extended before VCU was even involved. DeBauche did allege significant involvement by the state in making a facility available and in helping to promote the debate, but this assistance to private parties does not transform the private parties' conduct into state action. We have articulated the four exclusive circumstances under which private conduct will be deemed "state action," noting that if conduct "does not fall into one of these four categories, then the private conduct is not an action of the state." Andrews, 998 F.2d at 217.

16

Even though DeBauche could not fit her allegations into any of the four articulated circumstances she nevertheless pursued her action against the private parties, claiming that they violated her constitutional rights as state actors. In these circumstances, we cannot conclude that the district court abused its discretion in ordering the payment of fees and costs under § 1988.

DeBauche and the American Civil Liberties Union, as amicus, have suggested that ordering DeBauche to pay attorneys fees and costs will chill lawsuits by future individuals who feel that their constitutional rights have been violated. But "[w]hen a court imposes fees on a plaintiff who has pressed a `frivolous' claim, it chills nothing that is worth encouraging." Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). In fact, in the circumstances of this case, it can just as easily be argued that groundless lawsuits like DeBauche's might chill broadcasters' and journalists' exercise of their First Amendment rights in organizing political debates.

While we find no abuse of discretion in the decision to order DeBauche to pay fees and costs, we do believe that DeBauche's contention that her financial circumstances should be taken into account has merit. "The policy of deterring frivolous suits is not served by forcing the misguided [§ 1983] plaintiff into financial ruin simply because he prosecuted a groundless case." Arnold v. Burger King Corp., 719 F.2d 63, 68 (4th Cir. 1983). The record shows that DeBauche's combined income for the three years preceding her lawsuit was less than $42,000. Without more information about her resources or her backing for this lawsuit, it would appear that a $48,000 fee award against her would force her into "financial ruin." Because the district court does not appear to have taken into account the financial resources available to DeBauche, we must vacate and remand this part of the district court's judgment.

The defendants argue that the district court took DeBauche's financial means into account when it made her attorneys jointly and severally liable for a portion of the sanction. This, however, is not an appropriate way in which to take into account DeBauche's financial means because, under joint and several liability, she would still remain liable for the full amount of the award. If the court intended

17

to split responsibility for paying fees and costs between DeBauche and her attorneys, it may do so on remand.

B

DeBauche contends also that the imposition of sanctions jointly and severally on her attorneys under 28 U.S.C. § 1927 is error as a matter of law because that provision does not cover the circumstances found by the district court. Section 1927 provides:

> Any attorney or other person admitted to conduct cases . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The unambiguous text of§ 1927 aims only at attorneys who multiply proceedings. It "does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law." Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980). Rather, this provision "is concerned only with limiting the abuse of court processes." Id. Thus, an attorney who files a meritorious claim and wins a substantial verdict may still be assessed sanctions under § 1927 if, during the case, he"multiplies the proceedings . . . unreasonably and vexatiously." Likewise, an attorney who files a meritless claim may not be sanctioned under§ 1927 if he does not engage in such conduct. Section 1927 focuses on the conduct of the litigation and not on its merits.

In this case, DeBauche's attorneys filed only two documents, a complaint and an amended complaint, and, as to WRVA and WNVT (for whose fees and costs they have been made responsible), they filed only one document, the amended complaint in which WRVA and WNVT were first made parties. We conclude as a matter of law that the filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously and therefore that § 1927 cannot be employed to impose sanctions.

18

This is not to say, however, that the district court lacks authority to impose sanctions for the filing of a frivolous complaint. Federal Rule of Civil Procedure 11 allows sanctions against attorneys and parties who file pleadings that contain "claims[or] other legal contentions [that] are [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," or factual allegations that have neither evidentiary support nor the likelihood of forthcoming evidentiary support. Fed. R. Civ. P. 11(b)(2), (b)(3), (c).

Accordingly, we also vacate the sanctions imposed under § 1927 and remand to permit the district court to consider sanctions under Rule 11. Whether to impose Rule 11 sanctions, however, is committed to the discretion of the district court.

The judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED.

KING, Circuit Judge, dissenting in part:

Sue Harris DeBauche, the Reform Party's 1997 candidate for Governor of Virginia, alleged that two highly influential employees of Virginia Commonwealth University conspired with others to exclude her from a broadcast debate featuring the Democratic and Republican gubernatorial candidates. According to the First Amended Complaint, VCU president Eugene Trani and Distinguished Professor L. Douglas Wilder were motivated by DeBauche's political views to discriminate against her.

DeBauche's allegations, which must be taken as true at this initial stage of the proceedings, state a claim for relief against Trani and Wilder pursuant to 42 U.S.C. § 1983. By October 1997, it had been clearly established for at least twelve years that the First Amendment forbids the government to exclude from its forums those speakers with whom it disagrees, solely by reason of that disagreement.

Accordingly, I concur only in Part II of the majority's opinion,

19

which affirms the district court's dismissal of DeBauche's claims against Trani in his official capacity. I dissent from (1) the majority's holding in Part III that Trani was entitled to qualified immunity with regard to the claims against him in his individual capacity; (2) the majority's affirmance in Part IV of the district court's dismissal of the claims against Wilder; and (3) the majority's conclusion in Part V that Wilder, WRVA, and WNVT may be entitled to attorneys' fees and court costs.**1**

I.

A.

We are, of course, compelled to view the facts alleged by De-Bauche in the light most favorable to her. See Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999) (citation omitted). The district court's dismissal of DeBauche's complaint pursuant to Fed. R. Civ. P. 12(b)(6) can therefore be sustained "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). More-over, in accordance with federal notice-pleading standards, we are bound to construe the complaint liberally. Anderson v. Foundation for Advancement, Educ. & Employment of Am. Indians, 155 F.3d 500, 505 (4th Cir. 1998) (citing Conley at 45-46).

The complaint alleges generally that "[t]he actions of the defen-dants with respect to Ms. DeBauches's [sic] request for access, partic-ipation and expression in Debate Virginia . . . were taken pursuant to the VCU's policies, customs and/or practices and were authorized . . . by the defendants or their agents functioning at a policy making level." First Amended Complaint [hereinafter FAC] at ¶ 56. "[T]he defendants . . . have discriminated against Ms. DeBauche without a

_____

**1** In addition to concurring in Part II of the majority's opinion, I agree with its affirmance in Part IV of the district court's dismissal of the claims against WRVA and WNVT, based on DeBauche's failure to suffi-ciently allege that the broadcasters engaged in state action. I also agree with the majority's holding in Part V that the filing of a complaint cannot support an award of sanctions under 28 U.S.C. § 1927.

20

reasonable basis and have unlawfully discriminated against her based on her viewpoint . . . ." FAC at ¶ 64. "[T]he defendants' policies, customs and/or practices favor the speech of candidates of the major political parties over speech of candidates from minority political parties and thereby invert cherished First Amendment values promoting dissent, an open electoral process, and free and uninhibited public debate of political questions." FAC at ¶ 71.

DeBauche specifically alleged that Trani was responsible for implementing VCU's policies, and that the enforcement of those policies in this case was achieved with the "active participation, knowledge and/or acquiescence" of Trani and the other defendants. FAC at ¶¶ 8, 68. Wilder, in particular, was alleged to have "had a subjective appreciation that [his] acts would deprive Ms. DeBauche of her constitutional rights . . . ." FAC at ¶ 84.

B.

The preceding allegations clearly state a § 1983 claim against Trani and Wilder. Taking the averments in the complaint at face value, both defendants would be liable as a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." 42 U.S.C. § 1983.

The majority nonetheless affirms the district court's dismissal of DeBauche's complaint against these defendants, holding that (1) Trani is entitled to qualified immunity on the ground that he violated no clearly established constitutional right; and (2) Wilder was not, as a matter of law, a state actor. Ante at 7-8, 10-13. Both conclusions are, in my judgment, erroneous.

1.

The majority identifies the right sought to be vindicated in this case as the First Amendment's prohibition of "content-based or viewpoint-based decisions to exclude candidates from publicly sponsored debates." Ante at 9. According to the majority, our sister circuit's rul-

21

ing in Chandler v. Georgia Pub. Telecomm. Comm'n , 917 F.2d 486 (11th Cir. 1990), and the Supreme Court's recent holding in Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. 666 (1998), rejecting arguments that third-party candidates must be included in political debates sponsored by public television stations, preclude the possibility that DeBauche's right to be included in Debate Virginia was clearly established.

To the contrary, DeBauche's right to inclusion became clear more than five years prior to Chandler, with the Supreme Court's decision in Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788 (1985). Cornelius employed the analytical framework developed two years earlier in Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37 (1983), with respect to the"recurring and trouble-some issue of when the First Amendment gives an individual or group the right to engage in expressive activity on government property." Cornelius, 473 U.S. at 815 (Blackmun, J., dissenting).

Under Perry and Cornelius, it must first be determined whether the property to which the speaker desires access is a traditional public forum, a designated public forum, or a nonpublic forum. Perry, 460 U.S. at 45-46; Cornelius, 473 U.S. at 800, 802. If the forum is public, either by tradition or otherwise, speakers may only be excluded to serve a compelling governmental interest. Cornelius, 473 U.S. at 800. Conversely, if the forum is nonpublic (like Debate Virginia), restrictions on speech need only be reasonable in light of the property's intended purpose. Id. at 806. A speaker may properly be excluded from a nonpublic forum if, for example, she is not a member of the class of speakers for whose benefit the forum was created, or if she wishes to address a topic not within the purpose of the forum. Id.

Even in the case of a nonpublic forum, however, it is abundantly clear that a speaker may not be excluded on the basis of her view-point. As Justice O'Connor stated in Cornelius , "the government vio-lates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject." Id. at 806. Moreover, "[t]he existence of reasonable grounds for limiting access to a nonpublic forum . . . will not save a regulation

22

that is in reality a facade for viewpoint-based discrimination." Id. at 811 (citations omitted).**2**

DeBauche alleged that Trani, acting on behalf of a state university, excluded her from Debate Virginia to prevent her from publicly expressing her political views. She was indisputably a member of the class of speakers, i.e., ballot-qualified candidates for the office of Governor of Virginia, for whom the forum was created. There is likewise no dispute that DeBauche wished to speak on the same topics as her Democratic and Republican challengers. Consequently, under Cornelius, DeBauche stated a viable § 1983 claim upon which she must prevail if she can adduce sufficient proof that she was indeed discriminated against on the basis of her viewpoint.

Neither Chandler nor Forbes altered the basic rule of Cornelius. The debates at issue in those cases were organized and broadcast by state-owned television stations. Although Justice Kennedy's opinion in Forbes acknowledged some uncertainty as to whether the forum doctrine should apply in the "very different context of public television broadcasting," Forbes, 523 U.S. at 673, the Court ultimately decided that the doctrine should apply, at least with regard to political debates. Id. at 675 ("Although public broadcasting as a general matter does not lend itself to scrutiny under the forum doctrine, candidate debates present the narrow exception to the rule.").

But even a broadcaster cannot do what Trani is alleged to have done in this case:

_____

**2 Cornelius** involved a challenge by certain legal defense funds to their exclusion from the Combined Federal Campaign (CFC), an annual charity drive targeted at federal employees. The plaintiffs maintained that the prohibition against their participation in the CFC violated their First Amendment right to solicit charitable contributions. The Court held that the CFC was a nonpublic forum, and that the government could reasonably exclude controversial groups whose participation would disrupt the workplace and cause the drive to be less successful. The Court nevertheless remanded the case for the lower courts to determine whether the plaintiffs' exclusion was motivated by the government's desire to suppress their viewpoints.

23

> [T]he requirement of neutrality remains; a broadcaster cannot grant or deny access to a candidate debate on the basis of whether it agrees with a candidate's views. Viewpoint discrimination in this context would present not a calculated risk, . . . but an inevitability of skewing the electoral dialogue . . . . The debate's status as a nonpublic forum did not give [the defendant] unfettered power to exclude any candidate it wished.

Id. at 676, 682 (citation, internal quotation marks, and brackets omitted); accord Chandler, 917 F.2d at 489 ("[W]e can safely predict that the use of state instrumentalities to suppress unwanted expressions in the marketplace of ideas would authorize judicial intervention to vindicate the First Amendment.").

At bottom, neither VCU nor Trani is a broadcaster. There is no justification, then, for the majority's assertion that either Chandler or Forbes -- pertaining to broadcasters -- announced the standard against which Trani was expected to measure his conduct. That standard was set much earlier, in Cornelius. Viewed in their proper context, Chandler and Forbes merely extended the rule of Cornelius to encompass the peculiar realm of public television and radio broadcasters that organize political debates.

It is no answer to say that Cornelius was not a debate case, and therefore has no application here. Cornelius was a forum case, and a political debate is perhaps the quintessential forum. The law requires that qualified immunity be denied government officials who transgress those rights "of which a reasonable person would have known." Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir. 1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A reasonable person in Trani's position would have been aware that Cornelius forbade the type of viewpoint discrimination in which he is alleged to have engaged.[3] Consequently, I must conclude that Trani is not entitled to qualified immunity on the face of the complaint.

_____

[3] It is likewise immaterial that WRVA and WNVT were alleged to have participated in the decision to exclude DeBauche. Although these private broadcasters are not state actors and are thus impervious to this lawsuit, ante at 11-14 (citing Andrews v. Federal Home Loan Bank of Atlanta, 998 F.2d 214 (4th Cir. 1993)), Trani cannot cloak himself in their invulnerability. The mere happenstance that broadcasters are present on the periphery does not limit our consideration of the relevant precedents to Forbes and Chandler.

24

2.

The majority asserts that Wilder, in his role as a radio personality and political figure, cannot be considered a state actor with regard to his involvement in Debate Virginia. The majority overlooks, however, that Wilder was also a contract employee of VCU. The materials submitted below reveal that Wilder was appointed in 1995 to the position of Distinguished Professor in VCU's Center for Public Policy. See Appendix to Plaintiff's Opposition to the State Defendants' Motion to Dismiss, at 16 (J.A. 57). Indeed, the record contains no fewer than eight letters pertaining to Debate Virginia that were drafted by Wilder or his staff on VCU's letterhead. During De-Bauche's ongoing efforts to be included in the debate, she and other members of the Virginia Reform Party attempted to telephone Wilder at his VCU offices. FAC at ¶¶ 46, 48.

Although the district court granted Wilder's motion to dismiss without considering any materials beyond the complaint, we are not bound to follow the same path. See McNair v. Lend Lease Trucks, Inc., 62 F.3d 651, 656 (4th Cir. 1995) (court of appeals has the discretion to note a critical fact contained in a document submitted to, but not considered by, the district court in ruling on a motion under Rule 12(b)(6), where the parties are aware that materials outside the pleadings are before the court), reasoning adopted by McNair v. Lend Lease Trucks, 95 F.3d 325, 328 n.3 (4th Cir. 1996) (en banc) (vacating remainder of panel decision).

Absent discovery, it is impossible to ascertain the extent to which Wilder acted on behalf of VCU with regard to the organization and administration of Debate Virginia. Insofar as Wilder was indeed attempting to further the interests of his university employer, he was plainly engaging in state action within the contemplation of § 1983, and is therefore potentially liable to DeBauche. **4** The question cannot, in any event, be resolved as a matter of law on a motion to dismiss.

_____

**4** For the reasons I have expressed supra in Section I.B.1., Wilder -- like Trani -- would not be entitled to qualified immunity on the facts as alleged by DeBauche.

25

II.

Because I would reverse the district court's dismissal of De-Bauche's § 1983 claim against Wilder, it follows that I would likewise reverse the concomitant award of fees and costs. Though I agree with the majority that WRVA and WNVT cannot be deemed state actors in this case, see supra note 1, I do not think that DeBauche's assertions to the contrary are so "groundless or without foundation" as to justify a fee award under § 1988(b). Ante at 16 (noting standard). Particularly in light of Wilder's professional association with WRVA, I would not discount the possibility that DeBauche could have credibly alleged that Wilder coerced the radio station to adopt his position with regard to DeBauche's exclusion from the debate, thereby satisfying the first Andrews scenario, see ante at 12 (noting that a private party may engage in state action where "the state has coerced the private actor to commit an act that would be unconstitutional if done by the state").**5**

III.

This is an important case that has come to a premature conclusion. State colleges and universities are places in which the infinite diversity of human thought should be celebrated. Such institutions ought not be in the business of suppressing divergent viewpoints, a concept antithetical to the Constitution and to the cherished values upon which this nation was founded. We can only hope that, in this case, Sue Harris DeBauche was not silenced on account of her views as to how the Commonwealth of Virginia could best be governed. Unfortunately, as the result of the majority's decision today, we may never know.

_____

**5** Nor do I believe that sanctions pursuant to Rule 11 are appropriate in this case. Given the seriousness of the alleged conduct, the Supreme Court's consistent condemnation of viewpoint discrimination, and the unusual facts present here, DeBauche could make a nonfrivolous argument for the modification or extension of existing law to hold the broadcasters liable as state actors.