UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AARON E. MICHEL,

*Appellant,*

v.

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

and

EDWIN BROOKS LINVILLE, JR., a/k/a
Bones,

*Defendant.*

No. 00-6905

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(CR-99-57)

Argued: June 4, 2001

Decided: August 16, 2004

Before WIDENER, TRAXLER, and GREGORY, Circuit Judges.

---

Reversed by unpublished per curiam opinion. Judge Widener wrote
a dissenting opinion.

---

## COUNSEL

**ARGUED:** Randolph Marshall Lee, Charlotte, North Carolina, for
Appellant. Clifford Carson Marshall, Jr., Assistant United States

Attorney, Asheville, North Carolina, for Appellee. **ON BRIEF:** Mark T. Calloway, United States Attorney, Asheville, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Aaron Michel served as a court-appointed defense attorney for defendant Edwin Linville on drug-related charges. After a magistrate judge denied Michel's request to withdraw as Linville's counsel, Michel filed a motion to remove the prosecutor from the case, alleging prosecutorial misconduct in the government's failure to advise Linville of the status of plea negotiations with his co-conspirator. The district court found that Michel's motion to remove the prosecutor was frivolous and granted the government's motion for sanctions. Michel appeals the imposition of sanctions. We have jurisdiction under 28 U.S.C.A. § 1291 (West 1993), and for the reasons expressed below, we reverse.

I.

Internal Revenue Service agents in North Carolina arrested defendant Linville on Friday, August 27, 1999, on drug distribution and money laundering charges. Upon arrest, Linville waived his right to remain silent and indicated his desire to cooperate with the authorities. On Monday, August 30, Linville made his initial appearance before a magistrate, and on Wednesday, September 1, the court appointed Michel to represent him. On the same day, Michel sent to Assistant United States Attorney Robert Higdon, Jr., a letter expressing Linville's desire to continue his cooperation.

The next day, September 2, Michel and Higdon discussed Linville's case prior to the start of Linville's detention hearing. Hig-

don told Michel that the government could use Linville's testimony in the upcoming trial of Linville's co-conspirator, Eliseo Vargas, who was scheduled for trial on September 13. Higdon conveyed to Michel that day a draft of a Bill of Information for Linville and the government's plea offer, but no commitment was made at the time by Michel and Linville, presumably because Michel believed there was time to consider the offer and because he wanted time to review the government's evidence.

Michel went back to his office, called Higdon's assistant, and sought permission to review the evidence. Higdon's assistant told Michel that he could not have discovery until Linville's arraignment. Michel also asked for an explanation of the money laundering count, a request that Higdon's assistant said she would pass along to Higdon. The next day, September 3, 1999, Michel faxed his request in writing to Higdon.

On September 11, 1999, Michel received a letter from Higdon. In the letter, which was dated September 9, Higdon expressed his regret that Linville had not moved as quickly as the government had wanted and his disappointment that the government would not receive the full benefit of Linville's professed willingness to cooperate. Higdon then gave Michel the information Michel had requested concerning discovery and details regarding the money laundering count.

Michel wrote back the next day, September 12, 1999, reiterating Linville's unconditional availability to cooperate and to testify against Vargas and proposing that plea negotiations be postponed until after Linville's testimony in Vargas's trial. Included with the letter was a Garfield cartoon of dubious humor.

On September 13, Higdon responded, expressing his dismay at the tone and wording of Michel's letter. In the course of his response, Higdon informed Michel that Vargas had already pleaded guilty and that Linville's opportunity to cooperate had passed. Vargas had signed the plea agreement on September 2 (the day that Higdon told Michel the government was interested in having Linville testify against Vargas), and the government signed it on September 9, the day that Vargas pleaded guilty.

The record does not reflect when Michel received this letter. However, on September 17, 1999, Michel moved to withdraw as Linville's counsel, alleging personal animosity against him by Higdon and attaching the correspondence between the two of them. When he filed the motion to withdraw, Michel did not know the details surrounding the timing of Vargas's plea.

On September 28, Magistrate Judge McKnight held a hearing, reviewed the correspondence at issue, found Michel's concerns to be groundless, and denied the motion to withdraw. Michel appealed the decision of Magistrate Judge McKnight to the district court and for the first time requested Higdon's removal from the case. In his motion to recuse, Michel stated:

> Mr. Linville is entitled to effective assistance of counsel and to freedom from prosecutorial misconduct. . . . The due process requirements of full disclosure recognized in *Brady* are based upon the law against misrepresentation. Failure to disclose material matters, such as the plea of Mr. Vargas, and the false representation that Mr. Linville could testify against Vargas as part of his plea bargain, violate due process and the North Carolina Rules of Conduct. . . . For those reasons, the prosecutor should be removed from the case.

J.A. 56.

While Michel's appeal was pending before the district court, Michel moved to reopen Linville's detention hearing, arguing that his client had successfully completed the county jail's drug treatment program. Chief United States Magistrate Judge Horn held a bond review hearing on October 14 to address Michel's motion, which was unopposed by the government, and ordered Linville released. At the beginning of the October 14 hearing, Higdon alerted Magistrate Judge Horn to Michel's pending motion to remove Higdon from the case for prosecutorial misconduct, and Judge Horn questioned the defendant and both attorneys. Defendant Linville replied that he was satisfied with Michel's services and had not been aware of a problem between the attorneys. Higdon maintained that, although he had no personal animosity toward Michel, he took strong exception to being accused of misconduct and was preparing a detailed response to Michel's

motion. Higdon also informed the court that he would recommend that Michel be removed from the case. Michel acknowledged that he had twice before sought and been granted the court's permission to withdraw from cases in which Higdon represented the government, maintaining that in the prior cases, as in Linville's, Higdon had become more focused on Michel than on Michel's clients. Judge Horn decided to allow Michel to withdraw, noting that his decision should moot that portion of Michel's appeal to the district court. Judge Horn announced that, because of concerns about efficiency, he would instruct the clerk's office no longer to appoint Michel to cases that Higdon was prosecuting.

On October 21, 1999, the government filed with the district court a response to Michel's notice of appeal and motion to recuse the prosecutor. The government alleged that Michel's motion to recuse was frivolous and the government requested that the district court impose sanctions on Michel. Even though he had been relieved as counsel by Magistrate Judge Horn, Michel filed a response to the sanctions request. Michel contended that he acted in good faith with regard to all of his dealings with the government, and he reiterated his belief that Higdon's failure to disclose the status of Vargas's plea agreement was improper and thus provided an appropriate basis for his motion to remove Higdon from the case. In this same response, Michel submitted a list of questions about the details and timing of the plea negotiations between Vargas and the government that Linville's new counsel should get answers to before moving forward on the motion to remove the prosecutor. Michel proposed that the court resolve first the question of removal of the prosecutor before reaching the government's motions for sanctions against him, and he requested an evidentiary hearing on the motion for sanctions.

The government thereafter filed a statement of costs in support of its motion for sanctions, requesting attorney's fees and transcript costs associated with responding to Michel's motion to recuse. Michel filed a *pro se* response to the government's statement of costs, objecting to certain copying and transcript costs as excessive.

On January 5, 2000, the district judge, without holding a hearing, ruled on the various motions pending before it—Michel's appeal of the denial of his motion to withdraw as Linville's counsel, Michel's

motion to remove the prosecutor, and the government's motion seeking sanctions against Michel. The district court (1) denied Michel's appeal of Judge McKnight's denial of his motion to withdraw as Linville's counsel; (2) vacated Judge Horn's order allowing Michel to withdraw, concluding that a magistrate lacks authority to review the order of another magistrate judge; (3) allowed, on its own motion, Michel to withdraw in the interests of justice; (4) denied Michel's motion to remove Higdon from the case; (5) vacated, on its own motion, Judge Horn's order limiting the cases to which Michel could be appointed; and (6) granted the government's motion for sanctions against Michel. As to the sanctions, the district court ordered Michel to personally satisfy the excess costs, amounting to $680.75, incurred by the government in responding to the motion to remove Higdon. On appeal, Michel challenges only the issuance of the sanctions order against him.

## II.

The district court imposed sanctions under 28 U.S.C.A. § 1927 (West 1994) and under its inherent powers. We review the district court's decision to grant sanctions for abuse of discretion. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991); *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir. 1999). A court abuses its discretion when its ruling is based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

### A.

Section 1927 of Title 28 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Because the "unambiguous text of § 1927 [is] aim[ed] only at attorneys who *multiply* proceedings," *DeBauche v. Trani*, 191 F.3d 499,

511 (4th Cir. 1999), we have previously held that section 1927 does not authorize sanctions based on the filing of a single complaint. *See id.* at 511-12. Given this authority, we conclude that the filing of a single motion by Michel, which necessitated only a routine response, did not so "multiply the proceedings" as to violate section 1927. Accordingly, the district court erred by sanctioning Michel under section 1927.

### B.

A judge also has the inherent authority to impose sanctions against a party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46 (internal quotation marks omitted). This inherent power "extends to a full range of litigation abuses." *Id.* at 46. In this case, the district judge found Michel's motion to remove the prosecutor to be frivolous, in bad faith, and an abuse of the judicial process. His understanding of Michel's grievance was reflected in his order as follows:

> Mr. Michel's complaint with the handling of . . . Mr. Vargas's plea appears to be that the Government's failure to give Michel sufficient advance notice of the Vargas guilty plea deprived Mr. Michel of a prompting which might have affected Michel's judgment in advising the Defendant, thereby culminating in a better result for Defendant.

J.A. 205. Certainly this is one logical interpretation of the documents before the district judge. Unfortunately, this was not the only construction.

Michel argues that the intent of his motion was also to convey his belief that Higdon already had Vargas's commitment to plead guilty when Higdon was soliciting Linville's plea and holding out the prospect of Linville getting a downward departure motion for substantial assistance.[1] Because Vargas's plea agreement turned out to have been

---

[1] Section 5K1.1 of the United States Sentencing Guidelines permits a district court to depart downward from a normal guideline sentence if the defendant has been of substantial assistance in the investigation or prosecution of another criminal. The amount of reduction is to be determined by, among other things, the usefulness of the assistance and its timeliness.

signed by Vargas on the same day Higdon was proposing a plea agreement to Linville, Michel's view was that Higdon's promise of a substantial assistance motion for Linville's testimony against Vargas was an empty one. Higdon knew that Vargas was not going to trial, that Linville's testimony would not be needed, and that if Linville would plead quickly, Linville would not have time to investigate the strength of the government's case, saving the government the expense and burden of a trial. In short, the only advantage to Linville in pleading quickly was the hope of providing substantial assistance. If that was in reality nonexistent, then Linville would have everything to lose and the government everything to gain by a quick plea.

This, of course, may have turned out to be a completely false assumption on Michel's part. The reality of the situation could have been completely the opposite. Unfortunately, because the district court never held a hearing on Michel's motion nor on the prosecutor's motion for sanctions before ruling, this understanding of Michel's position was never obtained and a determination in this regard was not made.

Ordinarily, we would remand this case to the district court for consideration of this additional issue. However, since we have had the benefit ourselves of briefing and oral argument, we are able to say that the motion had a sufficiently colorable legal basis to preclude an award of sanctions. In so ruling, we hasten to state that this decision in no way reflects adversely upon the integrity of the prosecutor whose letters, pleadings, and presentation in court were models of decorum. Nevertheless, Michel made allegations which were objectively logical based on the facts known to Michel and which, if true, might have entitled him to the relief sought. For this reason an award of sanctions was inappropriate.[2]

*REVERSED*

---

[2]Given the result we reach, we need not address Michel's due process claim, his free speech claim, or his assertion of rights under *Brady v. Maryland*, 373 U.S. 83 (1963).

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

The case entirely depends on whether, on September 2nd, Higdon knew that Vargas had signed a plea agreement at the time Higdon spoke to Michel.

I agree with the suggestion in the majority opinion, that remand would ordinarily have been an acceptable solution. But in reversing, absent facts which we do not have, we are holding that the district judge should not have entered the sanction order that he did on the ground that an attorney ought not to file motions disqualifying opposing attorneys unless he has more definite information than the record shows was in the hands of Michel when he made the motion to disqualify Higdon. I cannot agree with that proposition.